The VANDERBILT UNIVERSITY, Plaintiff-Appellee,

v.

Glenn A. FERGUSON, Trustee for Metropolitan Government of Nashville and Davidson County, Tennessee, Defendant-Appellant.

Court of Appeals of Tennessee,
Middle Section.

Oct. 29, 1976.

Certiorari Denied by Supreme Court
March 28, 1977.

Rehearing Denied by Supreme
Court April 25, 1977.

---

W. W. Berry, Bass, Berry & Sims, Nashville, for plaintiff-appellee.

Donald L. Corlew, Dept. of Law of the Metropolitan Government of Nashville and Davidson County, Nashville, for defendant-appellant.

## OPINION

SHRIVER, Presiding Judge.

### —The Case—

This case involves the tax exempt status for the year 1974 of certain real property owned by plaintiff and used by it during 1974 to provide parking space for the faculty and staff of the Vanderbilt Medical Center. The property in question is located on Highland Avenue and Dixie Place in Nashville, Tennessee, near the Vanderbilt Medical Center and does not include adjacent property owned by Vanderbilt which is used for public parking and which is not claimed to be exempt from ad valorem taxation.

On receipt of notice from the Tax Assessor that the property involved here was not exempt from taxation, plaintiff, on April 30, 1975, paid taxes on the property in the amount of $5,861.70 under protest and filed this suit to recover same.

The case was heard by Honorable Ben H. Cantrell, Chancellor, Part I, Chancery Court

of Davidson County, on January 19, 1976 and resulted in a Memorandum Opinion and decree holding that the properties involved here were exempt from ad valorem taxation by the Metropolitan Government of Nashville and Davidson County, and that plaintiff is entitled to recover the taxes paid under protest, with interest thereon.

From said decree, defendant appealed and has assigned errors.

—The Pleadings and Proceedings Below—

The original complaint was filed on May 28, 1975 wherein it is averred that plaintiff is a non-profit educational corporation organized and existing under the laws of Tennessee; that defendant, Glenn A. Ferguson, is sued in his official capacity as Trustee for the Metropolitan Government of Nashville and Davidson County, Tennessee, in accordance with Sections 67–2302 to 67–2313, inclusive, of the Tennessee Code Annotated.

It is further averred that plaintiff is a non-profit educational institution, generally known as Vanderbilt University, and that in its operation as an educational institution it is necessary for it to own and operate extensive real property with improvements, and that the property involved in this suit is owned and used exclusively for educational purposes and is, therefore, exempt from ad valorem taxation. It is further averred that plaintiff operates parking lots for its students, faculty and staff which is a necessary part of its operation as a non-profit institution.

It is averred that defendant has heretofore recognized plaintiff's right to an exemption from ad valorem taxation for parking lots used by plaintiff's students and it is averred that the furnishing of parking lots for its faculty and staff is as necessary to its operation as an educational institution as is the furnishing of parking lots for its students.

The prayers of the complaint are:

(1) For process;

(2) For recovery of the sum of $5,861.70, with interest from the date of payment, April 30, 1975;

(3) For recovery of costs; and,

(4) For general relief.

Defendant moved the Court to dismiss the complaint on the ground that plaintiff had failed to exhaust its statutory remedies as set forth in T.C.A. § 67–513(c), which motion was overruled.

The answer of defendant puts at issue the questions hereinabove indicated.

—The Facts—

There is very little dispute as to the essential facts involved in this suit. There is no dispute as to the fact that Vanderbilt University is an educational institution within the provisions of Article II, Section 28 of the Constitution of Tennessee and Section 67–513, T.C.A.

The foregoing article of the Constitution provides that all property, real, personal or mixed, shall be subject to taxation, but the Legislature may except such as may be held by the State, by Counties, Cities or Towns, and used exclusively for public or corporation purposes, "and such as may be held and used for purposes purely religious, charitable, scientific, literary or educational . . . ."

Article 11, Section 12 of the Constitution enjoins the General Assembly to cherish literature and science, since knowledge, learning and virtue are essential to the preservation of Republican institutions.

Section 67–513, T.C.A., is, in pertinent part, as follows:

"*67–513. Religious, charitable, scientific or educational institutions.—*

(a) There shall be exempt from property taxation, the real and personal property owned by any religious, charitable, scientific or educational institution which is occupied and used by such institution or its officers purely and exclusively for carrying out thereupon one or more of the purposes for which said institution was created or exists . . . .."

DR. GEORGE KALUDIS, Vice-Chancellor for Operations and Physical Planning of Vanderbilt University, was called and testi-

fied that, among his duties was included the physical plant, planning for parking and transportation on the campus handled by departments that report to him; that he had the authority to assign University property for parking purposes and that he was familiar with the parking provided by the University in 1974.

He was asked to point out on the map made exhibit the areas involved in this litigation.

In answer to the question as to the use of the three lots involved in this suit, he stated:

"These three lots were used for parking for staff of the medical center, hospital of the University. Part of it was for residents and interns. A large part was used for the night shift nurses for the hospital, where we reserved a lot so that they could have parking when they came in for their shift. And then part of it was also used for the general staff parking for the hospital. But all is related to staff personnel in the University Medical Center." [Tr. pps. 28–29]

He was asked why these lots were made available to the persons just named. He answered:

"Well, for several reasons, Mr. Berry. First of all we are required by Metro zoning to provide certain number of off-street parking for students and faculty and staff, and we have to comply with that. And, secondly, there are no other parking—just practically no other parking facilities in the area other than public streets.

"There is, I think, one small lot operated by Peabody College which is up, I believe at the corner of Twenty-First Avenue and Edgehill. I think it has ninety spaces in it, or something. . . . But I believe that's the only out-and-out commercial facility in the area. And if we were not to provide this off-street parking for our staff, they would have to spread out on the public streets in the area, I assume, and in a radius that would probably go out three or four miles . . . in order to find a place to park to come to work at Vanderbilt University Hospital.

"I might add one other thing, Vanderbilt University Hospital is seven day week, twenty-four hours a day operation, and we have three shifts that operate there. People come in at all hours of the night. One of the reasons we reserved that space for the night nurses, providing security for them, and so forth." [Tr. pp. 29–30]

In answer to questions concerning Vanderbilt University, he stated that they have approximately seven thousand students, plus additional people who come to the campus for instruction or research, and he listed the eight different schools comprising the University, which included the School of Medicine. He also stated that, in addition to those schools, Vanderbilt operates a hospital. He was asked and answered:

"Q. Is that a charitable hospital, considered to be a charitable hospital?

A. Yes, sir, it is."

He was asked to describe what was meant by the Vanderbilt Medical Center and, in answer, he stated that the hospital is, in reality, an adjunct of Vanderbilt University School of Medicine; that it is a teaching hospital and is there to support, primarily, the School of Medicine, but also the School of Nursing, as well as the Division of Allied Health Professions which operates on the campus. He further stated:

"And when I use the term, Medical Center, I try to encompass not just the hospital but all the activities engaged in public research and public service that are the missions of Vanderbilt University, and therefore the School of Medicine and these other units I mentioned."

He was asked what he meant by the term "teaching hospital", whereupon, he explained that the patients who come in are used to support the instruction of medical students, nursing students, and allied health students as well as graduate medical students such as interns and residents who serve at the hospital. He stated:

"The hospital is the laboratory for the School of Medicine in this instance for in-patient activity."

There is no evidence in the record to contradict the foregoing testimony offered on behalf of plaintiff.

—Assignments of Error—

There are seven assignments, all of which involve the question whether the properties involved here are tax exempt.

We will first address ourselves to the questions raised by Assignments Nos. 3, 4 and 5. These assignments involve the question of the right of the plaintiff to contest the assessment of the tax by payment under protest and then suing for a refund of said taxes without first appealing to the Metro and State Boards of Equalization.

*Assignment No. 3* is to the effect that T.C.A. § 67–513(c) provides the exclusive remedy for obtaining a judicial determination of tax exemptions and it is argued that plaintiff was required to exhaust its administrative remedies by appealing to the local and state Boards of Equalization and obtaining a ruling thereon before appealing by certiorari to the Chancery Court for relief.

*Assignment No. 4* charges that the Chancellor misconstrued T.C.A. § 67–2305 in finding that it provided an alternative remedy for plaintiff.

T.C.A. § 67–2305 provides that a person paying the tax, at any time within six months after making said payment, may sue the officer having collected said sum for recovery thereof.

*Assignment No. 5* asserts that the Chancellor, in ruling on the tax exemption question, acted contrary to the statutes and Constitution by assuming a function properly delegated to an administrative body, to-wit, the Board of Equalization.

*T.C.A. § 67–2303* provides that in all cases where not otherwise provided in which an officer, charged with the collection of revenue due the State, shall institute any proceeding, or take any steps for the collection of the sum alleged or claimed to be due from any citizen, the person against whom the proceeding is taken shall, if he conceives the same to be unjust or illegal, pay the same under protest.

And, T.C.A. § 67–2305 provides that a person paying said revenue may, at any time within six months after making the payment, sue for recovery thereof.

Plaintiff asserts that defendant's contention that appeal to the State Board of Equalization, as provided in T.C.A. § 67–801, et seq., is the only remedy available to a taxpayer contesting the classification of its property as non-exempt and the assessment of taxes on such property is erroneous because it ignores the fact that the Sections relied on by defendant merely provide one method of contesting the position of the municipality in regard to the tax.

It is argued by counsel for plaintiff that there is nothing in § 67–513(c), or elsewhere, that would prevent the taxpayer from pursuing his usual remedy as provided in Sections 67–2303 and 67–2305 by paying the tax under protest and suing in Chancery Court for a refund.

In *Fentress County Bank and Union Bank v. Holt,* 535 S.W.2d 854 (Tenn.1976), the Court reviewed the remedies available to a taxpayer with regard to contested tax liabilities and, among other things, said:

"We believe that the Rosewood decision is a sound one, and that a taxpayer ought not to be required in all cases to go through boards of equalization or other administrative procedures in order to raise strictly legal issues. He may go through those agencies, of course, without first paying his taxes. He should, however, be permitted access to the courts to raise purely legal questions, but only after he has first paid the taxes under protest."

In *Rosewood, Inc. v. Gardner,* 63 Tenn. App. 559, 476 S.W.2d 273, and referred to and approved in *Fentress v. Holt,* supra, the Court recognized the inherent difference between a case involving the exempt status of an individual or organization and a case raising the question of fact as to the valuation of property and alleged discrimination. The Court said:

"After a review of the authorities the Chancellor made what we deem to be a proper distinction between this type of complaint pertaining to the right to an exempt status on the one hand, as distinguished from the complaint of the taxpayer that he has been grossly, fraudulently, or intentionally overvalued or discriminated against. In the latter type of complaint, the primary issue is the valuation of the property, and the Board, because of its presumed expertise in valuation, is best qualified to hear and correct any abuse suffered. Whereas, the first type of complaint (assessing exempt property) involves primarily questions of law, with the fact questions being incidental thereto, and renders the court the proper tribunal to hear and correct these abuses which are challenged as void assessments."

█ It is also argued by defendant that plaintiff's suit must fail because it did not make payment under protest before the assessed taxes became delinquent. However, the Courts, in construing T.C.A. § 67–2303, have previously held that a tax payment, in order to be involuntary and under duress, must, in fact, be delinquent.

In *Basket & Box Co. v. Lauderdale Co.*, 146 Tenn. 413, 241 S.W. 99 (1922), the Court laid down the proposition that taxes paid before they become delinquent are not paid under duress and, therefore, may not be recovered as having been paid under protest.

Most recent authority would indicate it may not now be necessary to wait until after the tax becomes delinquent before making payment under protest and suing for recovery. Nevertheless, we find no authority for the proposition that payment under protest and suit for recovery cannot be made after the tax becomes delinquent.

█ The contention that plaintiff is precluded from bringing suit because it failed to make application for tax exemption before March, 1975, must be rejected since T.C.A. § 67–513(b) provides that such application might not be made before April 1, 1975, and we find that plaintiff came within the requirements of the authorities in this respect.

It results that Assignments Nos. 3, 4 and 5 are overruled.

Assignments Nos. 1, 2, 6 and 7 involve the question whether the properties involved here are tax exempt.

*Assignment No. 1* charges error in holding that the parking lots were being used for the educational purposes of the plaintiff.

*Assignment No. 2* states that the Chancellor misinterpreted the holding in the case of *City of Nashville v. State Board of Equalization*, 210 Tenn. 587, 360 S.W.2d 458 (1962).

*Assignment No. 6* states that the plaintiff failed to adduce convincing proof as to the use of the parking lots in question on January 1, 1974.

█ The testimony of the Vice-Chancellor of Vanderbilt, hereinbefore referred to and quoted from and which was not contradicted by any other testimony in the record, furnishes ample proof as to the use of the parking lots in question on January 1, 1974; hence, Assignment No. 6 is overruled.

*Assignment No. 7* charges error on the part of the Chancellor in relying on certain authority from other jurisdictions.

█ The record does not support this assignment in that the Chancellor merely cited the authority in question as part of the authority relied on by him and, certainly, he cannot be held in error for citing and considering any authority that is pertinent and material to the question involved.

Assignment No. 7 is, therefore, overruled.

We begin the consideration of the ultimate question involved here as to the exemption or non-exemption of the property of plaintiff being used as parking lots for the faculty, staff, interns, residents, nurses and visiting physicians, by referring to the holding of the Supreme Court of Tennessee in *Peabody College v. State Board of Equalization*, 219 Tenn. 123, 407 S.W.2d 443 (1966), wherein the Court reaffirmed the

long standing rule in Tennessee which finds support in its constitution, that tax exemption in favor of educational institutions must be liberally construed. The Court, among other things, said:

"Since the decisions of that case, this Court in *Mid-State Baptist Hospital, Inc. v. City of Nashville,* 211 Tenn. 599, 366 S.W.2d 769 (1963), has emphatically restated the proposition that in this State, contrary to most other states, tax exemption in favor of religious, scientific, literary and educational institutions are liberally construed, rather than strictly. It is further pointed out that the opinion in City of *Nashville v. State Board of Equalization,* supra, in nowise dilutes the rule of liberal interpretation."

Also see *Book Agents v. State Board of Equalization,* 513 S.W.2d 514, 521 (1974).

We are frank to state that we have had difficulty in distinguishing the Chancellor's holding in the case at bar from the decision and holdings of the Supreme Court of Tennessee in the landmark case of *City of Nashville v. State Board of Equalization,* 210 Tenn. 587, 360 S.W.2d 458 (1962), wherein the Court, speaking through Mr. Justice Felts, pointed out that under our Constitution and statutes all property should be taxed unless duly exempted by organic or statute law, and one claiming such exemption has the burden of showing his right to it. The Court held that a religious institution's realty is exempt from taxation only when it is both occupied and used exclusively for one of its charter purposes and that parts of a religious institution's realty used by it for purposes of operation of automobile parking lots, a cafeteria and snack bar, in competition with other like tax-paying businesses, is not within the exemption provisions of the statute and were, therefore, not exempt from property taxation.

In said case the Court found that the religious institution used part of its realty for purposes of parking automobiles and operating a cafeteria and snack bar in competition with other like tax-paying businesses and that this was not a use that was exclusively for religious purposes, and had no relation to the charter purposes except for some consequential benefits.

The facts in the case at bar are distinguishable from the facts in the above case, where it was shown that the Publishing House was so located that parking facilities and restaurants were readily accessible and available to employees of the Sunday School Board which engaged primarily in the production of religious literature but also published secular literature and sold same for profit.

As far as this record shows, the parking facilities provided for the teaching staff, nurses and other personnel of Vanderbilt Hospital were reasonably necessary for the operation of that institution. Certainly the evidence does not preponderate against the Chancellor's finding in this regard.

Counsel for plaintiff point to the fact that authorities from other jurisdictions in factual situations identical with or very similar to the facts shown in the case at bar have almost uniformly held such parking lots to be exempt. These cases are summarized in a recent annotation, 33 A.L.R.3d 938.

Counsel also cite and quote from *University Circle Development Foundation v. Perk,* 200 N.E.2d 897 (Ohio 1964) and *Church Divinity School v. County of Alameda,* 314 P.2d 209 (Cal.1957) as being in point. In the *University Circle* case, supra, parking facilities were needed because of a lack of alternative parking and which were provided for a nominal charge by the educational institution were held to be tax exempt.

The Court stated:

"We conclude that the parking facilities in question are an essential and integral part of the charitable institutions exclusively used to carry on their functions, and the use is in no way commercial. . . . We, therefore, determine and hold that the property in question, used for parking facilities, is property used exclusively for charitable purposes within the meaning of [the Code]."

In the *Church Divinity School* case, supra, the Court held that the property used exclusively for purposes of education includes any facilities which are reasonably necessary for the fulfillment of a generally recognized function of a complete modern college and held that the parking lot for faculty, students and staff was reasonably necessary to the proper functioning of the school.

The most recent case dealing with the subject at hand in which there is a published opinion of the Supreme Court of Tennessee is *LaManna v. Electrical Workers Local Union,* 518 S.W.2d 348 (1974).

In an opinion wherein Mr. Justice Harbison spoke for the Court, the previous cases in Tennessee were reviewed and considered and limited tax exemption was upheld as a part of a parking lot adjacent to the defendant Union's headquarters where it was shown that at least part of the lot was used by students who came to the defendant's building for instruction and where Boy Scouts met regularly for purposes that might be regarded as being educational.

As stated in the opinion, the case involved a claim to tax exempt status of the headquarters and parking facilities of a local chapter of an International Union situated in Memphis, Tennessee. The building contained the business offices, the hiring hall and record offices of the local union, but some classrooms used for instructional purposes were in the basement or lower floor of the building and a parking area was used by some of those coming there for instruction.

It is recited that exemption was claimed on the basis that the local union was an educational institution within the meaning of the Tennessee statutes. The Chancellor held that the premises were entitled only to a partial exemption, but the Court of Appeals modified the decision so as to allow a tax exempt status to all of the property, except one office which was used for a Credit Union. In *LaManna,* the Court went on to say:

"As presented in this record, therefore, the question of whether the property in question is entitled to tax exempt status is primarily a legal one. The dispute between the parties concerns the extent to which the admitted uses of the property may place it within the exemptions allowed by state statutes."

The Court referred to and quoted from *Book Agents of Methodist Episcopal Church, South v. State Board of Equalization,* 513 S.W.2d 514 (Tenn.1974), as being the most recent and comprehensive treatment of the subject of the tax exemption statutes in Tennessee wherein it was held, among other things, that the determination of the scope of exemption and application of exemption to the facts does not result simply in a fact conclusion allowing only limited appellate judicial review. The opinion then quotes from the *Book Agents* case, supra, as follows:

"The tax exemption statutes in Tennessee are construed liberally in favor of religious, charitable and educational institutions . . . The basis for a liberal construction is a 'benefit conferred on the public by such institutions, and a consequent relief, to some extent, of the burden upon the state to care for and advance the interests of its citizens.' " [513 S.W.2d at 521]

The Court concludes as follows:

"Since the instructional program comprises approximately ten percent of the total activity shown to be conducted on the property, however, we think that the exemption of the parking spaces on the property at 1870 Madison Avenue, allowed by the Chancellor, should be permitted to stand."

It is thus seen that in this most recent Supreme Court case it was held that the property was exempt from taxation to the extent the instructional program was shown to be conducted on it in relation to other uses and the parking spaces on that property duly related to the instructional program were exempt.

In the case at bar we think it appears with sufficient clarity that the program and activities of the Vanderbilt University Hospital are directly related to and a part of the educational program of the institution and that the parking spaces provided for the instructors, the staff, the nurses and others who are an integral and necessary part of that educational process

should be and are held to be exempt from ad valorem taxation by the defendant.

It results that Assignments Nos. 1 and 2 are overruled.

All assignments having been overruled, the judgment of the Chancellor is affirmed.

AFFIRMED.

TODD, J., dissents.

DROWOTA, J., concurs.

TODD, Judge, dissenting.

I respectfully dissent from the majority opinion which, in effect, overruled *City of Nashville v. State Board of Equalization*, 210 Tenn. 587, 360 S.W.2d 458 (1962).

In the cited case, it was held that the realty of an eleemosynary institution is exempt under the statute only when it is both occupied and used exclusively by the institution for one of its charter purposes, and exemption is denied when property is leased to others or not used for charter purposes.

In the same case it was held that secular business enterprises outside the purposes stated in the charter with no relationship to charter purposes except consequential benefits are not exempt from taxation.

In said case it was held that portions of the property used for cafeteria, snack bar and free employee parking lots, including the roof of a building otherwise exempt, were taxable under the rationale that the said uses, even though confined to employees, were secular in nature and in competition with private, tax paying enterprise.

It is argued that there is little or no tax paying private enterprise in competition with the parking lots in the present case. It is not stated in the *Nashville v. State Board* case that there were actually private parking lots with sufficient capacity to accommodate the 665 automobiles parked on the property claimed exempt. (In reason and common sense, it must be assumed that no such large parking area was lying unused because of the parking space claimed exempt.)

The reasonable import of the *Nashville v. State Board* case is that the test is the deprivation of the opportunity of patronage to tax paying enterprises which would naturally exist in the absence of tax exempt competition. If the meaning of *Nashville v.*

*State Board* is as conceived by the Chancellor, then *Nashville v. State Board* is now subject to revision based upon the fact that the free parking lots furnished to employees have now driven private parking lots out of business so that there are no longer any private tax-paying parking lots to be affected by the competition.

In reality, appellee is paying its employees a fringe benefit (free parking fees) which, if paid in cash would be taxable as income and, when used to pay a private parking lot, would again augment tax revenues when the owner of the parking lot paid his privilege and property taxes. Our exemption law simply does not authorize tax exempt institutions to furnish tax exempt services to their employees.

As stated in the *Nashville v. State Board* opinion:

"It may well be that the Board, like many other large business concerns, finds that its furnishing eating and parking facilities for employees makes them better satisfied and furthers its efficiency. The same would no doubt be true as to furnishing them many other 'fringe benefits' of modern-day living; and if the Board may operate the parking lot and restaurant businesses tax-free, why may it not also operate other businesses tax-free, such as housing project, clothing store, automobile repair shop, etc., for its employees?"

The writer of this opinion is not unfriendly to eleemosynary institutions, nor unsympathetic with the need for parking facilities for employees. The burden of this dissent is that there must be some limitation upon the extent of *exempt* property holdings, and that limitation was stated in the *Nashville v. State Board* decision.

There is no reason why appellee cannot continue to provide parking facilities to its employees at a nominal charge sufficient to defray taxes and other expenses of its employee parking lot.

For the reasons stated, the decree of the Chancellor should be reversed.