Good Samaritan Hospital of Dayton, Ohio, Appellant, *v.* Porterfield, Tax Commr., Appellee.

(No. 71-36—Decided January 26, 1972.)

26

*Messrs. Smith & Schnacke* and *Mr. Howard N. Thiele, Jr.*, for appellant.

*Mr. William J. Brown*, attorney general, and *Mr. David S. Bloomfield*, for appellee.

LEACH, J. The single issue in this case is whether the building materials sold to contractors for incorporation into appellant's parking garage, and actually so incorporated, are exempt from the Ohio sales and use tax. We conclude that they are exempt and thus reverse the decision of the Board of Tax Appeals.

R. C. 5741.02(C)(2) excepts from the Ohio use tax the "storage, use or consumption in this state" of "tangible personal property, the acquisition of which, if made in Ohio, would be a sale not subject to the tax imposed" by the Ohio Sales Tax Act.

R. C. 5739.02 provides, in part:

"(B) The tax does not apply to the following:

"* * *

"(13) * * * building materials sold to a construction contractor for incorporation into * * * a building used exclusively for charitable purposes under a construction contract with an organization whose purpose is as described in division (B)(12) of this section * * *."

R. C. 5739.02(B)(12), so far as pertinent to the issues herein, excepts from taxation:

"Sales of tangible personal property to churches and to organizations not for profit operated exclusively for charitable purposes in this state, no part of the net income of which inures to the benefit of any private shareholder or individual and no substantial part of the activities of

which consists of carrying on propaganda or otherwise attempting to influence legislation.

"Charitable purposes means * * * the improvement of health through the alleviation of illness, disease, or injury * * *."

It is conceded that appellant is an organization "not for profit operated exclusively for charitable purposes," and that it fully qualifies for tax exemption under R. C. 5739.02(B)(12) to the extent of its operations of the hospital building and the hospital facilities located therein. Appellee and the Board of Tax Appeals, however, take the position that the parking garage cannot be considered "a building used exclusively for charitable purposes" within the purview of R. C. 5739.02(B)(13), since the *building itself* "is only used to park cars" and not for "the improvement of health through the alleviation of illness, disease, or injury." R. C. 5739.02(B)(12). The board concluded that the "parking garage is used just like any parking garage"; that "there are no operating rooms, bed space or anything of that nature" in the garage itself; and that "parking cars neither alleviates illness, disease, nor injury."

Were this a case involving exemption of real estate taxes, instead of sales and use taxes, our decision in *Bowers* v. *Akron City Hospital* (1968), 16 Ohio St. 2d 94, would be dispositive. The syllabus of *Bowers* reads:

"Real property owned and used by a charitable institution as a vehicle parking facility which is limited to visitors of patients and others having business with the institution, from whom fees are collected in order to exclude those not having a legitimate connection with the institution, may be exempted from taxation under Section 5709.12, Revised Code, as property belonging to an institution 'used exclusively for charitable purposes,' where the proceeds from such fees are used solely to regulate existing and provide for additional such parking facilities."

Unless the language of the sales and use tax acts would require a different result, it would appear that the rea-

soning in *Bowers* would be equally applicable here. We quote from the opinion in *Bowers,* at page 96:

"It is the use of property rather than the fact that revenues are collected and received from property which is controlling. *Vick* v. *Cleveland Memorial Medical Foundation,* 2 Ohio St. 2d 30. Nor do reasonable charges exacted from beneficiaries of a charitable institution detract from its eleemosynary character. *Planned Parenthood Assn.* v. *Tax Commr.,* 5 Ohio St. 2d 117; *Goldman* v. *Friars Club,* 158 Ohio St. 185. Here the evidence shows that the parking lot is an essential and integral part of the hospital's function and not property used mainly for income purposes. The lot provides visitors and patients a safe and convenient place to park. The fees are not diverted to purposes *ultra vires* of the institution, but are used to pay expenses of maintaining, regulating and expanding the parking area which is necessary for the hospital complex."

Here, too, the evidence clearly demonstrates that facilities for parking are an "essential and integral part of the hospital's function" and that they are "necessary for the hospital complex." Applying the rationale of *Bowers,* we see no distinction between a parking garage and a parking lot. In either case, the question of exemption should be determined by whether such parking facility is merely an adjunct to the hospital itself; and such would be true without regard to physical connection to the main hospital building.

*Bowers* cited with approval the holding of the Court of Appeals for Cuyahoga County in *University Circle Development Foundation* v. *Perk* (1964), 95 Ohio Law Abs. 353 which held that realty, which was owned and used by charitable institutions for parking facilities for students, faculty, staff members, employees and visitors, and for which a small fee was charged to offset a portion of the increased costs incurred in providing and regulating parking facilities, was "property used exclusively for charitable purposes" so as to be exempt from real property taxation.

See, also, *Cleveland* v. *Carney* (1961), 172 Ohio St.

189, exempting from real property taxes not only the Cleveland auditorium but also the underground parking area adjacent thereto on the basis (page 196) that it was an "incidental part of the overall use."

It would appear, therefore, that prior holdings of this court would compel the conclusion that the hospital parking garage, here involved, would be considered as being "used exclusively for charitable purposes" within the meaning of the statute providing for tax exemption of real property, R. C. 5709.12, and within the scope of Section 2, Article XII of the Ohio Constitution, which specifically permits the adoption of general laws exempting "institutions used exclusively for charitable purposes" from property taxation.

We, of course, recognize that comparable holdings as to real property tax exemption are not necessarily dispositive of sales and use tax exceptions or exemptions. Where a statute defines terms used therein, such definition controls in the application of the statute, even though such definition may vary from that employed as to similar words in other statutes. *Terteling Bros.* v. *Glander* (1949), 151 Ohio St. 236; *Woman's International Bowling Congress* v. *Porterfield* (1971), 25 Ohio St. 2d 271. See, also, *Toledo Retirement Living* v. *Board of Tax Appeals* (1971), 27 Ohio St. 2d 255, 258.

We also recognize that R. C. 5739.02(B)(12) "defines 'charitable purposes' far more explicitly" than does R. C. 5709.12. *Ohio Children's Society* v. *Porterfield* (1971), 26 Ohio St. 2d 30, at page 35.

However, in the instant case there is no dispute as to the fact that appellant does fall within the explicit definition of R. C. 5739.02(B)(12), it being axiomatic that the hospital's purposes are "the improvement of health through the alleviation of illness, disease, or injury."

Accepting the reasoning of *Bowers*—that the parking facility and the hospital are one and the same, that parking is necessary in the basic operation of the hospital, and that property used as an "essential and integral part" of

the "function" of a hospital is property "belonging to an institution 'used exclusively for charitable purposes' " within the meaning of R. C. 5709.12—it would logically follow that such property (in this case, a building) is "a building used exclusively for charitable purposes" within the purview of R. C. 5739.02(B)(13), so long as, in the words of the statute, the construction contract for such building is "with an organization whose purpose is as described in division (B)(12) of this section." We see no reason to interpret the sales and use tax statutes more strictly than we have the statutes relating to exemption from real property taxation.[2]

Thus, we hold that when, as here, a parking garage is an essential and integral part of the proficient operation of a hospital, which is operated exclusively for charitable purposes, as defined by R. C. 5739.02(B)(12), building materials sold to construction contractors for incorporation into that garage, under a construction contract with the hospital, are materials incorporated into a building used exclusively for charitable purposes, and thus are exempt from the Ohio sales and use taxes under R. C. 5739.02 (B)(13) and R. C. 5741.02(C)(2).

The decision of the Board of Tax Appeals is, therefore, reversed.

*Decision reversed.*

O'NEILL, C. J., SCHNEIDER, BRENNEMAN, CORRIGAN and STEPHENSON, JJ., concur.

HERBERT, J., dissents.

BRENNEMAN, J., of the Ninth Appellate District, sitting for DUNCAN, J. JUDGE BRENNEMAN of the Court of Appeals

---

[2]This is especially true in view of the fact that exemptions from real property taxation must fall within the legislation specifically permitted by Section 2, Article XII of the Ohio Constitution, while the exemptions and exceptions from the sales and use taxes are not so restricted. R. C. 5739.02(B) lists some 20 categories of sales to which the sales and use tax does not apply.

was, pursuant to Section 2 of Article IV of the Constitution of Ohio, duly directed by the Chief Justice "to sit with the justices of the Supreme Court in the place and stead of" JUSTICE DUNCAN and JUDGE BRENNEMAN did so and heard and considered this cause prior to the resignation of JUSTICE DUNCAN on November 28, 1971.

STEPHENSON, J., of the Fourth Appellate District, sitting for STERN, J.

HERBERT, J., dissenting. As noted by the majority, the General Assembly has prescribed that the building involved in this case is exempt from the subject tax only if the "building is used *exclusively* for charitable purposes * * *." (Emphasis added.)

Black's Law Dictionary (Rev. Fourth Ed. 1951), defines "exclusive" as "appertaining to the subject alone, not including, admitting, or pertaining to any others. * * *"

Webster's Seventh New Collegiate Dictionary (1967), states that "exclusive" means "* * * limiting or limited to possession, control, or use by a single individual or group * * *."

The American College Dictionary (1966), refers to "exclusive" as "not admitting of something else * * * limited to the object or objects designated * * * shutting out all others from a part or share * * *."

As the majority candidly points out, the building in this case was *not* used *exclusively* for charitable purposes, even under the test enunciated. True, the departure from that mandated status is minimal upon the record before us. However, the terminology employed by the General Assembly does not admit of judicial variance, for at no place in the statutes do we find terms such as "nearly," "almost," or "practically" exclusive. The clear and obvious meaning of "exclusive" simply forbids any such adjectival modification.

This court has never overruled the cases of *National Tube Co. v. Glander* (1952), 157 Ohio St. 407, 105 N. E. 2d

648; *L. A. Wells Construction Co.* v. *Bowers* (1955), 164 Ohio St. 357, 130 N. E. 2d 803; *Celina Mutual Ins. Co.* v. *Bowers, Tax Commr.* (1965), 5 Ohio St. 2d 12, 213 N. E. 2d 175, or *Ohio Ferro-Alloys Corp.* v. *Donahue, Tax Commr.* (1966), 7 Ohio St. 2d 29, 218 N. E. 2d 452.

Those cases all stand for the proposition set forth in the second paragraph of the syllabus of *National Tube, supra,* which states:

"*Statutes relating to exemption or exception from taxation are to be strictly construed,* and one claiming such exemption or exception must affirmatively establish his right thereto." (Emphasis added.)

In *Ohio Ferro-Alloys, supra,* at page 31, this court announced:

"* * * *This court has invariably recognized the proposition that tax exemption pro tanto violates the constitutional requirement of tax uniformity as well as the related proposition that statutory language granting tax exemption when construction is required must be construed most strongly against exemption.*" (Emphasis added.)

In his brief in this case, appellee cogently notes:

"Clearly a parking garage which admittedly parks cars and hopes to do so for a profit (R. 31), can hardly be said to be used *exclusively* for charitable purposes. Also in this vein, the use of the garage is such that it could hardly be said to be *exclusively* for charitable purposes. Employees park there because of handiness to their jobs, drug salesmen and the like park there in the hope of earning profit by making sales to the hospital. Clearly, the garage is just a garage and in no way used exclusively for the improvement of health."

In enacting the tax laws of this state, no doubt a myriad of factors influenced our legislative branch, among them being recognition of the absolutely necessary social roll played by our exclusively charitable institutions. However, I also believe that by the use of a word as unambiguous as "exclusively," the framers of R. C. 5739.02 (B)(12) were signaling their acute awareness of the con-

stantly growing demands for levied funds. In my opinion, they chose the word "exclusive" in an effort to maintain taxable status on as much property as would be compatible with reasonable eleemosynary predilections, while still attempting to spread the burden of taxation among as many of our citizens as possible.

Once a tax exemption such as the one before us is allowed, that revenue is lost forever from the tax base. Thereafter, the question of the exclusiveness of the use of the building for charitable purposes becomes meaningless insofar as those funds are concerned. Additionally, in all other cases where the use of a structure has been judicially determined to warrant exemption from taxation, that determination is necessarily made upon a record submitted at that time. Neither the tax commission nor the courts have the facilities to conduct sedulous surveillance to assure the continued exclusiveness of that usage.

I agree with the Tax Commissioner and the Board of Tax Appeals in this case. The building here involved was not being used "exclusively for charitable purposes," and the decisions of those tribunals should be affirmed.