**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Stewart v. Vivian,* **Slip Opinion No. 2017-Ohio-7526.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2017-OHIO-7526

STEWART, APPELLANT, *v.* VIVIAN, APPELLEE, ET AL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Stewart v. Vivian,* Slip Opinion No. 2017-Ohio-7526.]**

*Evidence—R.C. 2317.43—A "statement[] * * * expressing apology" for purposes of R.C. 2317.43(A) is a statement that expresses a feeling of regret for an unanticipated outcome of the patient's medical care and may include an acknowledgment that patient's medical care fell below standard of care— Court of appeals' judgment affirming trial court's exclusion of physician's statements to patient's family affirmed on different grounds.*

(No. 2016-1013—Submitted April 6, 2017—Decided September 12, 2017.)

CERTIFIED by the Court of Appeals for Clermont County,

No. CA2015-05-039, 2016-Ohio-2892.

————————————————

**KENNEDY, J.**

{¶ 1} This case was certified to this court by the Twelfth District Court of Appeals after it determined that its judgment conflicted with a judgment of the

Ninth District Courts of Appeals. We determined that a conflict exists and ordered the parties to brief the following question:

"[Are] a health care provider's statements of fault or statements admitting liability made during the course of apologizing or commiserating with a patient or the patient's family * * * prohibited from admission [into] evidence in a civil action under Ohio's apology statute, R.C. 2317.43?"

146 Ohio St.3d 1501, 2016-Ohio-5792, 58 N.E.3d 1173, quoting the court of appeals' July 7, 2016 entry.

{¶ 2} We hold that for purposes of R.C. 2317.43(A), a "statement[] * * * expressing apology" is a statement that expresses a feeling of regret for an unanticipated outcome of the patient's medical care and may include an acknowledgment that the patient's medical care fell below the standard of care.

{¶ 3} We therefore answer the certified question in the affirmative and affirm the judgment of the Twelfth District Court of Appeals.

**FACTS**

{¶ 4} In the early evening of February 19, 2010, Michelle Stewart attempted suicide. She was transported to the emergency department of Mt. Orab MediCenter. Around midnight, she was transferred to the psychiatric unit at Mercy Hospital Clermont. Appellee, Rodney E. Vivian, M.D., was the admitting physician.

{¶ 5} Leslie Wiggs, a registered nurse, conducted an initial assessment of Michelle upon admission to the psychiatric unit. After completing the assessment, Wiggs conferred with Dr. Vivian.

{¶ 6} After this discussion, Dr. Vivian ordered that a staff member of the psychiatric unit visually observe Michelle every 15 minutes. This order remained unchanged during her stay in the psychiatric unit.

{¶ 7} At approximately 6:00 p.m. the next day, Michelle's husband, appellant, Dennis Stewart, arrived at the psychiatric unit to visit her. Upon entering her room, he found her unconscious as a result of hanging. Thereafter, she was transferred to the intensive-care unit ("ICU") and placed on life support.

{¶ 8} Two days later, Dr. Vivian went to Michelle's ICU room to speak with her family. After Dr. Vivian briefly spoke to several family members in the room, one of them asked him to leave, which he did.

{¶ 9} On February 23, 2010, a neurologist informed Dennis that neurological testing indicated that Michelle would not recover. The following day, Dennis directed that life support be discontinued. A couple of hours later, Michelle died.

## PROCEDURAL HISTORY

### Trial-Court Proceedings

{¶ 10} On February 17, 2011, Dennis, individually and as administrator of Michelle's estate, filed suit against Dr. Vivian and Mercy Hospital Clermont. Dennis asserted claims of medical malpractice, loss of spousal consortium, wrongful death, and loss of chance against Dr. Vivian. He also asserted several claims against Mercy.

{¶ 11} In January 2013, the claims against Mercy were dismissed after Dennis and Mercy reached a settlement. The action against Dr. Vivian proceeded, and Dr. Vivian filed motions in limine to prohibit the admission of certain evidence at trial.

{¶ 12} One of Dr. Vivian's motions in limine sought to exclude statements he made to Michelle's family in her ICU room. Dr. Vivian argued that the statements were inadmissible pursuant to R.C. 2317.43, also known as the apology

statute, because the statements had been "intended to express commiseration, condolence, or sympathy." In response, Dennis argued that Dr. Vivian's statements were admissible because they were not "pure expression[s] of apology, sympathy, commiseration, condolence, compassion, or a general sense of benevolence."

{¶ 13} At a hearing held on Dr. Vivian's motion in limine, the trial court heard testimony regarding Dr. Vivian's visit to Michelle's ICU room from Stacey Sackenheim (Michelle's sister), Dennis, and Dr. Vivian. Each offered a different version of what Dr. Vivian had said before he was asked to leave the room.[1]

{¶ 14} Sackenheim testified:

Dr. Vivian just walked in through the door * * * and walked over to—toward the end of Michelle's bed, and kind of stood for a moment and then just said, so what do you think happened here?

And I believe Dennis responded and ex—and said, well, obviously she tried to kill herself. And [Dr. Vivian] said, yeah, she said she was going to do that. She told me she would keep trying.

{¶ 15} Dennis recounted:

Dr. Vivian walked in. I kind of tried to ignore him basically. Kept my focus mostly on Michelle. I do remember him saying a few things. I don't remember him asking me anything about how it happened. I—I just remember him saying that he didn't know how

---

[1] Dr. Vivian testified: "What I remember is walking in and being at—at bedside and telling the family I'm sorry this has happened. And what I remember is some—someone was screaming at me telling me this is my fault, and I said I was sorry, and I left." However, when questioned earlier about the ICU visit during his deposition, Dr. Vivian had answered, "I made a statement, but I don't remember what I said." While the trial court did not "think [Dr. Vivian] was lying" when he testified at the hearing on his motion in limine, it found Dr. Vivian's deposition testimony "to be the more credible version."

it happened; it was a terrible situation, but she had just told him that she still wanted to be dead, that she   wanted to kill herself * * *.

{¶ 16} The court concluded that there were "significant differences" between Sackenheim's and Dennis's testimony and that "it's probably impossible to reconcile" their respective versions.  And the court found that Dr. Vivian's statements were an "attempt at commiseration" and therefore inadmissible under the apology statute.  Accordingly, the court granted the motion in limine and excluded Dr. Vivian's statements.

{¶ 17} The matter proceeded to trial.  The jury returned a verdict in favor of Dr. Vivian, concluding that he was not negligent in his assessment, care, or treatment of Michelle.

## Appellate Proceedings

{¶ 18} Dennis timely appealed to the Twelfth District Court of Appeals, raising, among other issues, the trial court's exclusion of Dr. Vivian's statements in Michelle's ICU room.  The appellate court determined that R.C. 2317.43 is ambiguous because according to the term's dictionary definition, "apology" "may or may not include an admission of fault."  2016-Ohio-2892, 64 N.E.3d 606, ¶ 47.  Therefore, the court proceeded to consider the statute's legislative history, and it concluded that the General Assembly's intent was to protect all statements of apology—including those admitting fault—under R.C. 2317.43(A).  *Id.* at ¶ 47, 50.  Accordingly, the Twelfth District concluded that Dr. Vivian's statements were correctly excluded and affirmed the trial court's ruling.  *Id*.

## The Conflict Case

{¶ 19} In *Davis v. Wooster Orthopaedics & Sports Medicine, Inc.*, 193 Ohio App.3d 581, 2011-Ohio-3199, 952 N.E.2d 1216 (9th Dist.), the Ninth District determined that R.C. 2317.43(A) protects from admission "pure expressions of apology, sympathy, commiseration, condolence, compassion, or a general sense of

benevolence, but not admissions of fault." *Id.* at ¶ 13. In reaching this conclusion, the Ninth District reasoned that "the word 'apology' could reasonably include at least an implication of guilt or fault. On the other hand, 'when hearing that someone's relative has died, it is common etiquette to say, "I'm sorry," but no one would take that as a confession of having caused the death.' " *Id.* at ¶ 10, quoting *Schaaf v. Kaufman*, 850 A.2d 655, 664 (Pa.Super.Ct.2004). Nevertheless, considering "apology" in the context of the other sentiments listed in R.C. 2317.43(A), the court determined that it was not the intent of the General Assembly to protect statements of fault from admission as evidence. *Id.* The other sentiments listed, the court reasoned, "clearly do not convey any sense of fault or liability, indicating that the statute was intended to protect apologies devoid of any acknowledgment of fault." *Id.*

{¶ 20} The Ninth District then examined the legislative history of R.C. 2317.43 and noted that when the apology-statute bill was introduced in the General Assembly, "the 'Bill Summary' indicated that it would '[p]rohibit the use of a defendant's statement of sympathy as evidence in a medical liability action.' " *Id.* at ¶ 11, quoting Legislative Service Commission Analysis of Sub.H.B. No. 215, as reported by H. Insurance (2004). The court observed that the bill synopsis explained that " 'a statement of sympathy includes any and all statements, affirmations, gestures, or conduct expressing apology, sympathy, commiseration, condolence, compassion, or a general sense of benevolence.' " *Id.*, quoting Legislative Service Commission Analysis of Sub.H.B. No. 215. The court reasoned that "[t]he General Assembly's decision to define 'a statement of sympathy' as including a 'statement[ ] * * * expressing apology' demonstrates an intention to use the word 'apology' to mean 'only a statement of condolence or sympathy, without including any expression of fault or liability.' " *Id.* at ¶ 12. The court further reasoned that if the legislative intent had been to prohibit the admission of all statements of fault by medical professionals, the statute could have prohibited the

6

admission of "all 'admissions of liability' or 'statements against interest' " instead of limiting protected statements to those " 'expressing apology, sympathy, commiseration, condolence, compassion, or a general sense of benevolence.' " *Id.*, quoting R.C. 2317.43(A).

## ANALYSIS

### The Apology Statute—R.C. 2317.43

{¶ 21} Ohio's apology statute, R.C. 2317.43, provides:

> In any civil action brought by an alleged victim of an unanticipated outcome of medical care * * *, *any and all statements, affirmations, gestures, or conduct expressing apology, sympathy, commiseration, condolence, compassion, or a general sense of benevolence* that are made by a health care provider * * * to the alleged victim, a relative of the alleged victim, or a representative of the alleged victim, and that relate to the discomfort, pain, suffering, injury, or death of the alleged victim as the result of the unanticipated outcome of medical care are inadmissible as evidence of an admission of liability or as evidence of an admission against interest.

(Emphasis added.)  R.C. 2317.43(A).

### The Apology Statute Is Unambiguous

{¶ 22} The Twelfth and Ninth District Courts of Appeals each concluded that R.C. 2317.43(A) is ambiguous.  We disagree.

{¶ 23} The interpretation of a statute is a question of law that we review de novo. *State v. Pariag*, 137 Ohio St.3d 81, 2013-Ohio-4010, 998 N.E.2d 401, ¶ 9.  A court's main objective is to determine and give effect to the legislative intent.

*State ex rel. Solomon v. Police & Firemen's Disability & Pension Fund Bd. of Trustees*, 72 Ohio St.3d 62, 65, 647 N.E.2d 486 (1995).

**{¶ 24}** The intent of the General Assembly must be determined primarily from the language of the statute itself. *Stewart v. Trumbull Cty. Bd. of Elections*, 34 Ohio St.2d 129, 130, 296 N.E.2d 676 (1973). "When the statutory language is plain and unambiguous, and conveys a clear and definite meaning, we must rely on what the General Assembly has said." *Jones v. Action Coupling & Equip., Inc.*, 98 Ohio St.3d 330, 2003-Ohio-1099, 784 N.E.2d 1172, ¶ 12, citing *Symmes Twp. Bd. of Trustees v. Smyth*, 87 Ohio St.3d 549, 553, 721 N.E.2d 1057 (2000).

**{¶ 25}** "Where a statute defines terms used therein, such definition controls in the application of the statute * * *." *Good Samaritan Hosp. of Dayton v. Porterfield*, 29 Ohio St.2d 25, 29, 278 N.E.2d 26 (1972), citing *Terteling Bros., Inc. v. Glander*, 151 Ohio St. 236, 85 N.E.2d 379 (1949), and *Woman's Internatl. Bowling Congress, Inc. v. Porterfield*, 25 Ohio St.2d 271, 267 N.E.2d 781 (1971). Terms that are undefined in a statute are accorded their common, everyday meaning. R.C. 1.42.

**{¶ 26}** The General Assembly did not define the term "apology" for purposes of R.C. 2317.43(A). Therefore, we first consider the dictionary definition of the term.

**{¶ 27}** "Apology" is ordinarily defined as

> 1: something said or written in defense or justification of what appears to others to be wrong or of what may be liable to disapprobation * * * 2: an attempt to justify or excuse * * * 3: an acknowledgment intended as an atonement for some improper or injurious remark or act: an admission to another of a wrong or discourtesy done him accompanied by an expression of regret * * *.

*Webster's Third New International Dictionary* 101 (2002).[2]

{¶ 28} The first and second of the above-quoted meanings of "apology" are not relevant to our resolution of the certified-conflict issue, which concerns only statements of fault and statements admitting liability. *See State v. Chappell*, 127 Ohio St.3d 376, 2010-Ohio-5991, 939 N.E.2d 1234, ¶ 18 (applying the two most relevant definitions of "criminally" in interpreting R.C. 2923.24(A)). When the third meaning of "apology" is applied to the word as it is used in R.C. 2317.43(A), the statutory language is susceptible of only one reasonable interpretation. Under this plain and ordinary meaning of "apology," for purposes of R.C. 2317.43(A), a "statement[] * * * expressing apology" is a statement that expresses a feeling of regret for an unanticipated outcome of the patient's medical care and may include an acknowledgment that the patient's medical care fell below the standard of care.

{¶ 29} Appellant, relying on *Davis*, 193 Ohio App.3d 581, 2011-Ohio-3199, 952 N.E.2d 1216, argues that only "pure" expressions of apology are protected from admission as evidence in a civil action. While the Ninth District did determine that only "pure expressions of apology"—"not admissions of fault"— were protected, *id.* at ¶ 13, the General Assembly did not qualify the term "apology" with the word "pure" or place any limitation on the meaning of the term "apology" by specifically defining that term. "Unambiguous statutes are to be applied according to the plain meaning of the words used, and courts are not free to * * * insert other words." (Citation omitted.) *State ex rel. Burrows v. Indus. Comm.*, 78 Ohio St.3d 78, 81, 676 N.E.2d 519 (1997).

{¶ 30} As R.C. 2317.43(A) is unambiguous, it "is to be applied, not interpreted." *Sears v. Weimer*, 143 Ohio St. 312, 55 N.E.2d 413 (1944), paragraph

---

[2] A fourth common meaning of "apology" is "something that serves as an excuse for the absence of something: a poor specimen or substitute." *Webster's Third New International Dictionary* at 101. Because "apology" in this sense does not refer to a statement, it is obviously not the meaning intended by the General Assembly in the apology statute.

five of the syllabus. Accordingly, " 'inquiry into legislative intent, legislative history, public policy, the consequences of an interpretation, or any other factors identified in R.C. 1.49 is inappropriate.' " *Jacobson v. Kaforey*, 149 Ohio St.3d 398, 2016-Ohio-8434, 75 N.E.3d 203, ¶ 8, quoting *Dunbar v. State*, 136 Ohio St.3d 181, 2013-Ohio-2163, 992 N.E.2d 1111, ¶ 16. "We 'do not have the authority' to dig deeper than the plain meaning of an unambiguous statute 'under the guise of either statutory interpretation or liberal construction.' " *Id.*, quoting *Morgan v. Adult Parole Auth.*, 68 Ohio St.3d 344, 347, 626 N.E.2d 939 (1994).

### CONCLUSION

{¶ 31} We hold that R.C. 2317.43(A) is unambiguous. Applying the plain and ordinary meaning of the term "apology," for purposes of R.C. 2317.43(A), a "statement[] * * * expressing apology" is a statement that expresses a feeling of regret for an unanticipated outcome of the patient's medical care and may include an acknowledgment that the patient's medical care fell below the standard of care.

{¶ 32} We therefore answer the certified question in the affirmative and affirm, albeit on different grounds, the judgment of the Twelfth District Court of Appeals.

Judgment affirmed.

O'DONNELL, FRENCH, FISCHER, and DEWINE, JJ., concur.

O'CONNOR, C.J., concurs in part and dissents in part, with an opinion joined by O'NEILL, J.

_____

**O'CONNOR, C.J., concurring in part and dissenting in part.**

{¶ 33} I concur in the majority's holding that a "statement expressing apology" pursuant to R.C. 2317.43(A) is one that "expresses a feeling of regret for an unanticipated outcome of the patient's medical care and may include an acknowledgment that the patient's medical care fell below the standard of care." Majority opinion at ¶ 2. But I do not believe that the statements of appellee, Rodney

Vivian, M.D., at issue in this case are statements expressing apology under the statute, and I therefore dissent from the majority's judgment. I would reverse the judgment of the Twelfth District Court of Appeals, hold that Dr. Vivian's statements were not inadmissible under the apology statute, and remand the cause to the trial court for further proceedings.

{¶ 34} An appellate court may reverse a trial court's decision not to admit evidence pursuant to R.C. 2317.43 if it finds an abuse of discretion. *Estate of Johnson v. Randall Smith, Inc.*, 135 Ohio St.3d 440, 2013-Ohio-1507, 989 N.E.2d 35, ¶ 22. "For an abuse of discretion to have occurred, the trial court must have taken action that is unreasonable, arbitrary, or unconscionable." *Id.* Here, the trial court found that Dr. Vivian went to Michelle Stewart's room in the intensive-care unit ("ICU") for the purpose of saying, "I'm sorry," but that "the statement that was made appears to be a rather ineffective attempt at commiseration." Acknowledging that there was limited case law interpreting the statute, the trial court found that Dr. Vivian's statements were "covered" under R.C. 2317.43 and therefore inadmissible.

{¶ 35} The trial court's application of R.C. 2317.43(A) to the facts here was unreasonable.

{¶ 36} "A decision is unreasonable if there is no sound reasoning process that would support that decision." *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). The statute refers to "any and all statements, affirmations, gestures, or conduct *expressing* apology, sympathy, commiseration, condolence, compassion, or a general sense of benevolence." (Emphasis added.) R.C. 2317.43(A). And the majority's holding describes a statement that "expresses a feeling of regret for an unanticipated outcome." Majority opinion at ¶ 2. "Express" means "to represent in words: state, utter[;] * * * to give or convey a true impression of: display fully or exactly." *Webster's Third New International Dictionary* 803 (2002). Contrary

to the majority's endorsement of the trial court's conclusion, the statute does not cover statements merely intending or attempting to express commiseration or a feeling of regret, or ones that do so only obliquely.

{¶ 37} At the hearing on Dr. Vivian's motion in limine, the trial court heard testimony from three different witnesses about the statements that Dr. Vivian made when he visited Michelle's ICU room.

{¶ 38} Michelle's sister testified that Dr. Vivian walked into Michelle's room and asked, "[S]o what do you think happened here?" She testified that Michelle's husband responded, "[W]ell, obviously she tried to kill herself," to which Dr. Vivian replied, "[Y]eah, she said she was going to do that. She told me she would keep trying."

{¶ 39} Michelle's husband testified: "I just remember [Dr. Vivian] saying that he didn't know how it happened; it was a terrible situation, but she had just told him that she still wanted to be dead, that she wanted to kill herself * * *."

{¶ 40} Dr. Vivian also testified at the hearing, but that testimony was different from his deposition testimony. The trial court found that the more credible testimony from Dr. Vivian was that he did not remember what he said to Michelle's family.

{¶ 41} Applying the majority's interpretation of a "statement expressing apology," I would hold that Dr. Vivian's statements, as established by the evidence, expressed neither apology nor "sympathy, commiseration, condolence, compassion, or a general sense of benevolence," as described in the statute. According to Michelle's sister, Dr. Vivian asked a question then offered a summary of statements that Michelle had made to him. Michelle's husband also testified that Dr. Vivian summarized Michelle's prior statements and added a description of his own state of mind (that he did not know how Michelle's injury had happened but that he recognized that it was a terrible situation).

**{¶ 42}** Dr. Vivian's statements were not an apology nor did they express regret or a type of shared sadness associated with sympathy or commiseration. Dr. Vivian's recitation of Michelle's prior statements certainly does not fall within the statute. "What do you think happened here?" is a question, not an expression of Dr. Vivian's regret or sympathy. Dr. Vivian's statement that he "didn't know how it happened" similarly is not an apology. Although it could be an expression of shock, it was also not sympathetic, particularly given the family's state of mind as exemplified by Michelle's husband's answer, "[O]bviously she tried to kill herself." Describing the situation as "terrible" comes closest to expressing some kind of commiseration or sympathy. However, the context of Dr. Vivian's "terrible situation" statement—immediately following his statement that he did not know what had happened—does not make clear that he was sympathizing with Michelle's family. At the very best, he implied sympathy but did not "display [it] fully or exactly."

**{¶ 43}** Although I do not believe that the statute must be rigidly construed to cover only those statements including the words "I apologize" or "I sympathize," there must be a limit based on the actual content of the statements and not the intention of the speaker. If not, a health-care provider could render any statement inadmissible simply by affirming a subjective intent to apologize or to console. Wherever we draw the line on what constitutes a "statement expressing apology," it should not encompass vague statements that, at best, might constitute expressions of shock and surprise but that have no indicia of apology, commiseration, or regret.

**{¶ 44}** Thus, although I concur in the majority's holding describing a "statement of apology" according to the statute and would also answer the conflict question in the affirmative, I respectfully dissent from the majority's application of the law to the facts of this case. Accordingly, I would reverse the judgment of the Twelfth District Court of Appeals and would remand the case to the Clermont County Court of Common Pleas for further proceedings.

O'NEILL, J., concurs in the foregoing opinion.

_____

Stagnaro, Saba & Patterson Co., L.P.A., Peter A. Saba, Jeffrey M. Nye, and Sharon J. Sobers, for appellant, individually and as the administrator of the estate of Michelle Stewart.

Arnzen, Storm & Turner, P.S.C., and Aaron A. VanderLaan, for appellee.

Bricker & Eckler, L.L.P., Anne Marie Sferra, and Noorjahan Rahman, urging affirmance for amici curiae Ohio State Medical Association, Ohio Hospital Association, and Ohio Osteopathic Association.

Tucker Ellis, L.L.P., Irene C. Keyse-Walker, and Susan M. Audey, urging affirmance for amicus curiae Academy of Medicine of Cleveland and Northern Ohio.

_____