[Cite as *State v. Clutter*, 2026-Ohio-139.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CHAMPAIGN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | C.A. No. 2025-CA-14 |
| Appellee | : | |
| | : | Trial Court Case No. 2023 CR 143 |
| v. | : | |
| | : | (Criminal Appeal from Common Pleas |
| STEVEN R. CLUTTER | : | Court) |
| | : | |
| Appellant | : | **FINAL JUDGMENT ENTRY &** |
| | : | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on January 16, 2026, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

RONALD C. LEWIS, JUDGE

EPLEY, P.J., and TUCKER, J., concur.

LUCAS W. WILDER, Attorney for Appellant
KARA N. RICHTER, Attorney for Appellee

LEWIS, J.

{¶ 1} Defendant-Appellant Steven R. Clutter appeals from the judgment of the Champaign County Common Pleas Court revoking his community control and imposing a 12-month prison sentence. For the following reasons, we affirm the judgment of the trial court.

## I. Facts and Procedural History

{¶ 2} On August 1, 2023, Clutter was indicted by a Champaign County grand jury on one count of possession of a fentanyl-related compound, in violation of R.C. 2925.11(A), a fifth-degree felony ("Count 1"); and one count of operating a vehicle under the influence of alcohol, a drug of abuse, or a combination of them ("OVI"), in violation of R.C. 4511.19(A)(1)(a), a first-degree misdemeanor ("Count 2"). On October 16, 2023, Clutter pleaded guilty to both counts of the indictment in exchange for the State's recommendation of community control sanctions. The trial court accepted Clutter's guilty pleas and found him guilty on each count. Both parties waived a presentence investigation report, and the trial court proceeded immediately to sentencing. The court imposed a two-year term of community control sanctions and ordered Clutter to comply with the Champaign County standard conditions of community control. The court further imposed special conditions of community control precluding him from purchasing, receiving, possessing, ingesting, injecting, or consuming illegal controlled substances, alcohol, non-prescribed medication, medical marijuana, and various other substances. The trial court advised

Clutter of the potential consequences of violating his community control sanctions, including imposition of a prison term of 6 to 12 months on Count 1 and a jail term of 180 days on Count 2. On the same day as Clutter's sentencing, signed copies of his community control sanctions and special conditions were filed with the court. Clutter did not file an appeal from his conviction.

{¶ 3} On April 7, 2025, Clutter's probation officer filed a notice of supervision violations that alleged two violations of Clutter's standard conditions of community control sanctions and one of the special conditions. The notice alleged that Clutter had violated standard condition #7 of his community control sanctions, which precluded him from leaving the State of Ohio without written permission of the Adult Parole Authority. The notice also alleged that Clutter had violated standard condition #10, which required Clutter to notify and report to his supervising officer any arrest, citation of a violation of law, conviction, or any other contact with a law enforcement officer no later than the next business day. Finally, the notice alleged that Clutter had violated a special condition that he not purchase, receive, ingest, inject, or consume alcohol or illegal controlled substances. Specifically, the notice alleged that Clutter had traveled to six different states without permission, failed to inform his probation officer of contact with law enforcement, and admitted that he had consumed alcohol and marijuana on March 22, 2025.

{¶ 4} On April 23, 2025, the trial court held a revocation hearing. At the beginning of the hearing, the State informed the court that Clutter agreed to admit to the violations in return for the State's recommendation that he remain on community control sanctions with an added special condition that he gain admission to and successfully complete the program at the West Central Community Based Correctional Facility ("CBCF"). As the trial court proceeded in a colloquy with Clutter regarding his admissions, Clutter stated he was willing

to admit to the violations regarding standard condition #7, in that he went out of state six times without permission, and standard condition #10, in that he failed to notify his supervising officer of his contact with law enforcement. Clutter also did not contest that he violated part of the special conditions in that he admitted he had used marijuana. However, Clutter denied that he had admitted that he consumed alcohol on March 22, 2025. Following the colloquy, the court accepted Clutter's admissions and found him guilty of those violations. The case was continued for a hearing on the alleged violation of the special condition involving the alleged admission that Clutter had consumed alcohol.

{¶ 5} The following day, the State filed a motion to amend the notice of violations to allege that Clutter consumed alcohol on or about March 22, 2025. The State's motion was granted without objection.

{¶ 6} A hearing was held on April 30, 2025, at which the State presented the testimony of Ashley McIntosh, Clutter's supervising probation officer. McIntosh testified that she interviewed Clutter on April 3, 2025, during which he informed her that he had received a speeding ticket. McIntosh discovered that Clutter had been issued a speeding ticket by the Ohio State Highway Patrol on March 22, 2025, for traveling 74 m.p.h. in a 55-m.p.h. zone. Clutter entered a guilty plea in the Clinton County Municipal Court and was convicted of the speeding infraction.

{¶ 7} McIntosh also reviewed the contents of Clutter's cell phone and took screenshots of some of Clutter's text messages, which were submitted at the hearing. Approximately 20 minutes after the traffic citation, Clutter had texted his boss that he got stopped for speeding "74 in a 55" and got lucky because he was "half drunk." In other text messages with a friend, Clutter had stated that he "was still half drunk when he pulled me over." McIntosh reviewed the text messages with Clutter during the April 3, 2025 meeting.

4

At that time, Clutter did not admit he sent the text messages, but he also did not deny sending them.

{¶ 8} Clutter testified on his own behalf. Clutter denied that he was drinking and driving on March 22, 2025. Clutter stated that he had picked up his friend early in the morning that day, and they hung out and smoked marijuana. According to Clutter, his friend was in the car with him when he was pulled over, and the text messages were made by his friend who had Clutter's phone. Clutter testified that the references in the text messages to "I" were spelling or grammar errors.

{¶ 9} Following the conclusion of the hearing, the trial court found Clutter guilty of the remaining contested community control violation. The court immediately proceeded to sentencing and imposed a prison term of 12 months on Count 1 and 180 days in jail on Count 2 and ordered the sentences to run concurrently. Clutter timely appealed.

## II. Community Control Violations

{¶ 10} Clutter raises a single assignment of error alleging that the trial court erred in sentencing him to a 12-month prison term. Clutter does not contest that he was in violation of his community control sanctions. Rather, he argues that his violations were merely "technical" violations, and therefore the trial court was prohibited by R.C. 2929.15(B)(1)(c)(i) from sentencing him to a term of incarceration exceeding 90 days. He also contends that the trial court should have sentenced him to the CBCF, as the parties had recommended, rather than a prison sentence.

{¶ 11} In response, the State contends that based on the plain language of R.C. 2929.15(B)(1), a trial court is authorized to impose a full prison term when a defendant is found to have left the state without permission regardless of whether his community control violations are technical in nature. According to the State, this is so because the

5

requirement not to leave the state without permission is not part of a defendant's community control sanctions but rather a separate requirement. Alternatively, the State asserts that Clutter's violations did not qualify as technical violations, so the trial court did not err in ordering Clutter to serve a 12-month prison sentence.

{¶ 12} "The revocation of community control is an exercise of the sentencing court's criminal jurisdiction, and pursuant to R.C. 2929.15(B)(1), the court may extend the term of the offender's community control or impose a more restrictive sanction or a prison term if the conditions of community control are violated." *State v. Heinz*, 2016-Ohio-2814, ¶ 15. "If the conditions of community control are violated, R.C. 2929.15(B) provides the trial court a great deal of latitude in sentencing the offender." *State v. Brooks*, 2004-Ohio-4746, ¶ 20. However, for certain felony offenses, R.C. 2929.15(B)(1)(c)(i) "authorizes a trial court to impose a prison term as a penalty for community-control violations but limits the amount of prison time that the court may impose for a 'technical violation' to 90 days." *State v. Castner*, 2020-Ohio-4950, ¶ 2.

{¶ 13} Our review of a prison sentence imposed for violations of felony community control sanctions is dictated by the standard of review set forth in R.C. 2953.08(G)(2). *State v. Gibson*, 2017-Ohio-691, ¶ 14 (2d Dist.). As framed by Clutter's assignment of error, the relevant question in this case is whether the record "clearly and convincingly" shows that his "sentence is otherwise contrary to law." R.C. 2953.08(G)(2)(b).

{¶ 14} The State argues that the plain language of R.C. 2929.15(B)(1) highlights the distinction between a violation of a condition of community control and the prohibition against leaving the state of Ohio without permission. The statute provides, in relevant part:

> (B)(1) . . . if the conditions of a community control sanction imposed for a felony
>
> are violated or if the offender violates a law or leaves the state without the

6

permission of the court or the offender's probation officer, the sentencing court may impose on the violator one or more of the following penalties:

. . .

(c) A prison term on the offender pursuant to section 2929.14 of the Revised Code and division (B)(3) of this section, provided that a prison term imposed under this division is subject to the following limitations and rules, as applicable:

(i) If the prison term is imposed for any technical violation of the conditions of a community control sanction imposed for a felony of the fifth degree, the prison term shall not exceed ninety days . . . .

R.C. 2929.15(B)(1)(c)(i).

{¶ 15} Under section (B)(1), the State emphasizes the "or" separating "conditions of a community control sanction" and "leaves the state without permission of the court or the offender's probation officer." The State then contends that the limitation in (c)(i) on imposing a prison term only applies to a technical violation of the "conditions of a community control sanction" and therefore does not apply to the prohibition against leaving the state without permission of the court or the offender's probation officer. The State argues that "because the General Assembly has expressly enumerated leaving the state in (B)(1), it does not fall into the separate general category of 'conditions of the community control sanction,' and therefore the technical violation analysis is not necessary for the court to impose the full prison term." Brief of Appellee, p. 3.

{¶ 16} We disagree with the State's interpretation of the statute. The interpretation of a statute is a question of law that this court reviews de novo. *State v. Pariag*, 2013-Ohio-4010, ¶ 9. When interpreting a statute, a court's main objective is to determine and give

effect to the legislature's intent. *Stewart v. Vivian*, 2017-Ohio-7526, ¶ 23, citing *State ex rel. Solomon v. Police & Firemen's Disability & Pension Fund Bd. of Trustees*, 72 Ohio St.3d 62, 65 (1995). "When a statute is plain and unambiguous, we apply the statute as written, and no further interpretation is necessary." (Citations omitted.) *Wayt v. DHSC, L.L.C.*, 2018-Ohio-4822, ¶ 15.

{¶ 17} R.C. 2929.15 concerns community control sentences for felony offenders. When a defendant is sentenced to community control sanctions and the court imposes one or more nonresidential sanctions, as in this case, the court "shall impose *as a condition of the nonresidential sanctions* that, during the period of the sanctions, the offender must abide by the law *and must not leave the state without the permission of the court or the offender's probation officer*." (Emphasis added.) R.C. 2929.15(A)(1). *See also* R.C. 2929.17 ("If the court imposes one or more nonresidential sanctions authorized under this section, the court shall impose as a condition of the sanction that, during the period of the nonresidential sanction, the offender shall abide by the law and shall not leave the state without the permission of the court or the offender's probation officer."). The court is then permitted to impose "any other conditions of release" under a community control sanction that the court considers appropriate. R.C. 2929.15(A)(1). Notably, "'[i]n ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole.'" *State v. Turner*, 2020-Ohio-6773, ¶ 18, quoting *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988). In reading R.C. 2929.15 as a whole, the requirement that an offender not leave the state without permission unambiguously constitutes a condition of community control. Only after a defendant is granted community control sanctions can there be a violation of those sanctions to which R.C. 2929.15(B)(1)(c)(i) may apply.

8

{¶ 18} Nevertheless, we agree with the State's alternative argument that Clutter's violations amounted to non-technical violations of the conditions of his community control, and therefore the trial court was not constrained by the 90-day prison limitation in R.C. 2929.15(B)(1)(c)(i). Relevant here, a "technical violation" is a violation of the conditions of a community control sanction imposed for a felony of the fifth degree and to which neither of the following applies:

(1) The violation consists of a new criminal offense that is a felony or that is a misdemeanor other than a minor misdemeanor, and the violation is committed while under the community control sanction.

(2) The violation consists of or includes the offender's articulated or demonstrated refusal to participate in the community control sanction imposed on the offender or any of its conditions, and the refusal demonstrates to the court that the offender has abandoned the objects of the community control sanction or condition.

R.C. 2929.15(E).

{¶ 19} At the time of Clutter's revocation hearings, Clutter admitted that he left the state of Ohio six separate times between October 28, 2024, and April 3, 2025, without permission of the court or his supervising officer. This included traveling to Pennsylvania, Missouri, Washington, D.C., Kansas, South Carolina, and Virginia. Clutter also admitted to using marijuana and failing to inform his supervising officer of his contact with law enforcement when he was cited for speeding on March 22, 2025. Despite Clutter's denial, the trial court found that Clutter had consumed alcohol on the day of the traffic offense. The trial court noted the text messages from Clutter's phone submitted during the revocation hearing were "consistent with the Defendant's general attitude of arrogance and smugness

9

when he's commenting to look at the rest of his criminogenic behaviors and attitudes in this case. Including his time on community control." April 30, 2025, Revocation Hrg. Tr. 66-67. The text messages indicated that Clutter had consumed alcohol and was "half drunk" at the time of his March 22, 2025 traffic violation, though he was not charged with an OVI.

{¶ 20} The trial court found that Clutter's multiple violations of leaving the state without permission evidenced Clutter's articulated or demonstrated refusal to participate in the community control sanctions imposed, which demonstrated to the court that Clutter had abandoned the objects of the community control sanction or condition. Due to Clutter's repeated violation of leaving the state without permission, he made himself unavailable for supervision, unavailable to be monitored for illicit drug use, and unavailable for substance use dependency management and counseling. Accordingly, the court found that R.C. 2929.15(E)(2) applied and that Clutter's actions did not constitute a technical violation.

{¶ 21} Having reviewed the record and relevant case law, we agree with the trial court that the overall pattern of Clutter's behavior and that the cumulative effect of his violations demonstrated a refusal to comply with his community control sanctions as a whole. Therefore, the trial court correctly classified Clutter's community control violations as non-technical pursuant to R.C. 2929.15(E). Because Clutter was sentenced for non-technical violations of his community control sanctions, the trial court was not limited to imposing a 90-day sentence but rather could sentence Clutter to any prison term within the permissible range of prison terms for a felony of the fifth degree, namely 6 to 12 months. R.C. 2929.14(A)(5). At the time of sentencing, the trial court stated it considered the purposes and principles of sentencing under R.C. 2929.11, and the seriousness and recidivism factors under R.C. 2929.12. The court then imposed a sentence of 12 months

10

in prison, which was within the permissible statutory range. Clutter's sentence is therefore not contrary to law.

{¶ 22} Furthermore, although R.C. 2929.15(B)(1)(b) permits a trial court to impose a term in a CBCF for a violation of community control sanctions, the trial court was not required to sentence Clutter to a CBCF despite the parties jointly recommending such. Accordingly, we see no reversible error in the trial court's sentence. Clutter's assignment of error is overruled.

### III.    Conclusion

{¶ 23} Having overruled the assignment of error, we affirm the judgment of the trial court.

. . . . . . . . . . . . .

EPLEY, P.J., and TUCKER, J., concur.