[Cite as *State v. Pettigrew*, 2026-Ohio-2312.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | C.A. No. 30772 |
| Appellee | : | |
| | : | Trial Court Case No. 2025 CR 01400 |
| v. | : | |
| | : | (Criminal Appeal from Common Pleas |
| MYLAN PETTIGREW | : | Court) |
| | : | |
| Appellant | : | **FINAL JUDGMENT ENTRY &** |
| | : | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on June 18, 2026, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

_____
ROBERT G. HANSEMAN, JUDGE

TUCKER, J., and EPLEY, J., concur.

ARVIN S. MILLER, Attorney for Appellant
ANDREW T. FRENCH, Attorney for Appellee

HANSEMAN, J.

{¶ 1} Appellant Mylan Pettigrew appeals from his conviction in the Montgomery County Common Pleas Court after he pleaded no contest to one count of failure to comply with the order or signal of a police officer. In support of his appeal, Pettigrew claims that the trial court erred by finding that he was ineligible for intervention in lieu of conviction ("ILC"). Pettigrew contends that the trial court misinterpreted the ILC eligibility requirement under R.C. 2951.041(B)(10) and incorrectly determined that the requirement applied to him. For the reasons outlined below, we disagree with Pettigrew's claims and affirm the judgment of the trial court.

**Relevant Background Information**

{¶ 2} On June 25, 2025, a Montgomery County grand jury returned an indictment charging Pettigrew with one fourth-degree felony count of failure to comply with the order or signal of a police officer in violation of R.C. 2921.331(B). Following his indictment, Pettigrew filed a motion requesting the trial court to impose ILC pursuant to R.C. 2951.041. "ILC is a statutory creation that allows a trial court to stay a criminal proceeding and order an offender to a period of rehabilitation if the court has reason to believe that drug or alcohol usage was a factor leading to the offense." *State v. Massien*, 2010-Ohio-1864, ¶ 9, citing R.C. 2951.041(A)(1). In his motion, Pettigrew claimed that ILC was warranted in his case because substance abuse was a factor that led to his charged offense.

{¶ 3} On February 5, 2026, the trial court issued a decision overruling Pettigrew's motion for ILC on grounds that, under R.C. 2951.041(B)(10), Pettigrew was ineligible for ILC. Under that statute, an offender is not eligible for ILC if he or she is charged with "an offense that would result in the offender being disqualified under Chapter 4506. of the Revised Code from operating a commercial motor vehicle or would subject the offender to any other sanction under that chapter." R.C. 2951.041(B)(10).

{¶ 4} In overruling Pettigrew's motion for ILC, the trial court explained that Pettigrew's charged offense, fourth-degree felony failure to comply with the order or signal of a police officer, carries a mandatory class two driver's license suspension as a sanction. *See* R.C. 2921.331(E). The trial court found that if Pettigrew were convicted of the charged offense, he would be sentenced to the mandatory driver's license suspension, which would disqualify him from operating a commercial motor vehicle. The trial court reached that conclusion because it found that a valid driver's license is a prerequisite to obtaining a commercial driver's license under Chapter 4506 of the Revised Code. Because the trial court found that the mandatory driver's license suspension disqualified Pettigrew from operating a commercial motor vehicle, it concluded that he was ineligible for ILC under R.C. 2951.041(B)(10).

{¶ 5} After the trial court overruled Pettigrew's motion for ILC, on February 9, 2026, Pettigrew pleaded no contest to the charge of failure to comply with the order or signal of a police officer. The trial court accepted Pettigrew's no contest plea, found him guilty of the charged offense, and sentenced him to community control sanctions and a three-year driver's license suspension. Pettigrew now appeals from his conviction, raising a single assignment of error for review.

**Assignment of Error**

{¶ 6} Under his assignment of error, Pettigrew contends that the trial court erred by finding him ineligible for ILC under R.C. 2951.041(B)(10). He claims that the trial court misinterpreted and misapplied the ILC eligibility requirement under that statutory provision. We disagree.

{¶ 7} As a preliminary matter, we note that ILC "[e]ligibility determinations are matters of law subject to de novo review." *State v. Baker*, 2012-Ohio-729, ¶ 8 (2d Dist.). "Specifically, whether the trial court has improperly expanded or interpreted the statutory eligibility determinations is reviewed de novo." *State v. Hardwick*, 2015-Ohio-1748, ¶ 23 (2d Dist.); *State v. Vanzandt*, 2015-Ohio-236, ¶ 6 (the interpretation of a statute is a question of law that is reviewed de novo). "'In de novo review, we independently review trial court decisions and accord them no deference.'" *State v. Matosky*, 2025-Ohio-5658, ¶ 9 (2d Dist.), quoting *Coldly v. Fuyao Glass America, Inc.*, 2022-Ohio-1960, ¶ 9 (2d Dist.). Accordingly, no deference shall be accorded to the trial court's interpretation of the ILC statute.

{¶ 8} "When analyzing statutory provisions, our paramount concern is to ascertain and give effect to the intention of the General Assembly." *Vanzandt* at ¶ 7, citing *Henry v. Cent. Natl. Bank*, 16 Ohio St.2d 16 (1968), paragraph two of the syllabus. "'[W]e first look to the plain language of the statute, and if that language is unambiguous and definite, we apply it as written.'" (Bracketed text in original.) *State v. Staffrey*, 2025-Ohio-2889, ¶ 17, quoting *State v. Pettus*, 2020-Ohio-4836, ¶ 10. "An unambiguous statute must be applied by giving effect to all of its language, without adding or deleting any words chosen by the General Assembly." *Vanzandt* at ¶ 7, citing *Armstrong v. John R. Jurgensen Co.*, 2013-Ohio-2237, ¶ 12.

{¶ 9} The ILC eligibility provision at issue here provides that an offender is not eligible for ILC if he or she is charged with "an offense that would result in the offender being *disqualified* under Chapter 4506. of the Revised Code from operating a commercial motor vehicle or would subject the offender to any other sanction under that chapter." (Emphasis added.) R.C. 2951.041(B)(10). Therefore, under the plain language of R.C. 2951.041(B)(10), an offender is ineligible for ILC if the charged offense disqualifies the offender from operating a commercial motor vehicle.

{¶ 10} Pettigrew argues that the term "disqualified" as defined by Chapter 4506 does not include the failure to satisfy a prerequisite for obtaining a commercial driver's license, his situation in this case. The State responds that, under the statutory definition of "disqualified," the driver's license suspension attendant to Pettigrew's conviction disqualifies him from operating a commercial motor vehicle and thus renders him ineligible for ILC under R.C. 2951.04(B)(10).

{¶ 11} To address the parties' arguments, we must determine what the term "disqualified" means. "The principle is well-settled that where a statute defines the terms it uses, this definition controls in applying the statute." *State v. Miller*, 2019-Ohio-3294, ¶ 23 (2d Dist.), citing *Stewart v. Vivian*, 2017-Ohio-7526, ¶ 25. "However, if terms are undefined, they are given their 'common everyday meaning.'" *Id*., quoting *Vivian* at ¶ 25, citing R.C. 1.42.

{¶ 12} In support of their arguments, both parties point to the following definition of "disqualification" in Chapter 4506:

"Disqualification" means any of the following:

(1) *The suspension, revocation, or cancellation of a person's privileges to operate a commercial motor vehicle*;

5

(2) Any withdrawal of a person's privileges to operate a commercial motor vehicle as the result of a violation of state or local law relating to motor vehicle traffic control other than parking, vehicle weight, or vehicle defect violations;

(3) A determination by the federal motor carrier safety administration that a person is not qualified to operate a commercial motor vehicle under 49 C.F.R. 391.

(Emphasis added.) R.C. 4506.01(G)(1) through (3).

{¶ 13} Focusing on division (1) of the definition, the State argues that any privilege Pettigrew may have had to operate a commercial motor vehicle was effectively suspended, revoked, or canceled due to the driver's license suspension that resulted from his conviction. Pettigrew, on the other hand, argues that the definition does not apply to him because it concerns the removal of an existing privilege from a person who currently holds a commercial driver's license.

{¶ 14} The term "suspension" is not defined in Chapter 4506; accordingly, we apply its common, everyday meaning. The common definition of "suspension" is "[t]he temporary deprivation of a person's powers or privileges." Black's Law Dictionary (12th Ed. 2024). Similarly, the common definition of "suspend" is "to temporarily keep (a person) from performing a function, occupying an office, holding a job, or exercising a right or privilege." *Id*.

{¶ 15} With those definitions in mind, we look to the relevant provisions of Chapter 4506. R.C. 4506.06(A)(1) provides that a person must hold a valid driver's license to receive a commercial driver's license temporary instruction permit. It also provides that a commercial driver's license temporary instruction permit is a prerequisite to receiving "[a]n initial

6

issuance of a commercial driver's license when a skills test is required." [1] R.C. 4506.06(A)(1). Therefore, generally speaking, a commercial driver's license cannot be obtained without a temporary instruction permit, and a temporary instruction permit cannot be obtained without a valid driver's license. Accordingly, one must have a valid driver's license in order to exercise the privilege of operating a commercial motor vehicle.

{¶ 16} Prior to his conviction, Pettigrew had such a privilege. Whether he actually exercised or wanted to exercise that a privilege is irrelevant to our analysis. What is relevant is that the privilege was suspended once he was convicted of fourth-degree felony failure to comply with an order or signal of a police officer and sentenced to a driver's license suspension. Because a valid driver's license is required for a commercial driver's license temporary permit and a temporary permit is required to obtain a commercial driver's license, while Pettigrew's driver's license is suspended, he cannot exercise the privilege of operating a commercial motor vehicle. His conviction, therefore, resulted in the suspension of the privilege to operate a commercial motor vehicle and thus amounts to "disqualification" as that term is defined in R.C. 4506.01(G)(1). Based on this disqualification, Pettigrew was ineligible for ILC under R.C. 2951.041(B)(10).

{¶ 17} Although it did not specifically address the meaning of the term "disqualification," the Twelfth District Court of Appeals reached the same conclusion under an analogous set of facts in *State v. Schneider*, 2025-Ohio-4625 (12th Dist.). The Twelfth District found:

Pursuant to R.C. 2921.331(E), a charge of fourth-degree felony failure to comply with the order or signal of a police officer in violation of R.C. 2921.331(B) includes a requirement that the trial court suspend the

---

1. The skills test may be waived for qualifying military personnel. R.C. 4506.09.

7

offender's driver's license for a period of three years to life. A person applying for a commercial driver's license temporary instruction permit must hold a valid driver's license. R.C. 4506.06(A). A commercial driver's license temporary instruction permit is a prerequisite for receiving "[a]n initial issuance of a commercial driver's license when a skills test is required." R.C. 4506.06(A)(1). Consequently, given the plain language of the statutes involved, an offender who has been charged with fourth-degree felony failure to comply with the order or signal of a police officer in violation of R.C. 2921.331(B) is not statutorily eligible for ILC. This is because the offender cannot, as a matter of law, satisfy the condition set forth in R.C. 2951.041(B)(10).

. . . [A]s set forth above, an offender who has been charged with fourth-degree felony failure to comply with the order or signal of a police officer in violation of R.C. 2921.331(B) is not statutorily eligible for ILC. This is because the offender cannot, as a matter of law, satisfy the condition set forth in R.C. 2951.041(B)(10). That statute requires the offender not be "charged with an offense that would result in the offender being disqualified" under R.C. Chapter 4506 "from operating a commercial motor vehicle." Schneider was charged [with] an offense that would result in her being disqualified under R.C. Chapter 4506 from operating a commercial motor vehicle pursuant to R.C. 4506.06(A). Therefore, the trial court did not err by finding Schneider was not statutorily eligible for ILC given that she could not, as a matter of law, satisfy the condition set forth in R.C. 2951.041(B)(10).

8

*Id.* at ¶ 9-10.

**{¶ 18}** When applying the clear and unambiguous language of the relevant statutes, we find that Pettigrew was ineligible for ILC under R.C. 2951.041(B)(10). Accordingly, we do not find that the trial court erred by overruling Pettigrew's motion for ILC on that basis.

**{¶ 19}** Pettigrew's assignment of error is overruled.

### Conclusion

**{¶ 20}** Having overruled Pettigrew's assignment of error, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

TUCKER, J., and EPLEY, J., concur.