[Cite as *Smith & Condeni, L.L.P. v. Condeni*, 2023-Ohio-1480.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

SMITH AND CONDENI, LLP, ET AL,   :

     Plaintiffs-Appellants,    :

                               No. 111903

     v.                     :

JOSEPH A. CONDENI, ET AL.,    :

     Defendants-Appellees.    :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED AND REMANDED
**RELEASED AND JOURNALIZED:** May 4, 2023

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-17-889339

---

### *Appearances:*

Cavitch, Familio & Durkin Co., LPA, Max E. Dehn, and Madelyn M. Maruna, *for appellants*.

Dunson Law, LLC, and Joseph P. Dunson, *for appellees*.

SEAN C. GALLAGHER, J.:

{¶ 1} N. Lindsey Smith, and Smith and Condeni, LLP ("S&C"), appeal the trial court's interlocutory decision declaring Smith to have been dissociated from S&C as late as December 29, 2014, before their claims for relief against Joseph

Condeni are alleged to have arisen. For the following reasons, the decision of the trial court is affirmed.

{¶ 2} In light of the interlocutory nature of this appeal, the recitation of the facts is limited to those necessary to resolving the limited issue presented for review. Although the amended complaint and counterclaim contain several allegations pertaining to damages caused by the other's alleged misconduct, the trial court bifurcated the trial proceeding. The first part involved a hearing on the dissociation claims advanced by Smith and Condeni that would determine which of the two was authorized to act on behalf of S&C, potentially impacting Smith's ability to include S&C as a co-plaintiff. That is to be followed by the resolution of the claims stemming from the various tort and contract claims advanced by Smith and Condeni, some of which were claims on behalf of S&C. Neither of the parties challenge the trial court's decision to bifurcate the proceeding in this manner.

{¶ 3} Smith and Condeni each owned a 50 percent share of S&C until a dispute arose in 2014 regarding Smith's desire to withdraw from the partnership and move his part of the practice to another law firm. During the harmonious years of S&C's operations, Smith focused his practice of law on estate planning, while Condeni focused on personal injury litigation. S&C employed several associates and support staff and leased the building within which it operated from a separate entity owned and managed, in pertinent part, by Smith and Condeni. As part of Smith's estate planning practice, S&C registered a trade name, Trustee Administration

Services ("TAS"), with the Ohio Secretary of State. TAS was established by S&C to handle insurance trust matters for Smith's estate-planning clients.

{¶ 4} In 2014 the partners started discussing Smith's desired departure from S&C. On December 29, 2014, Smith provided Condeni a memorandum detailing the proposed move and, shortly thereafter, began transitioning clients and some of S&C's staff to Cavitch, Familo & Durkin Co., L.P.A. ("Cavitch"). Unbeknownst to Condeni, Smith had already shared S&C's privileged and confidential information with Cavitch as early as October 29, 2014, providing Cavitch with personal information of S&C employees, including salary information for S&C employees Cavitch anticipated hiring and projected and past revenues for the entire S&C estate planning practice. Smith provided that information from a personal email account not associated with S&C and in purported violation of Article 18 of the S&C Partnership Agreement. Under Section 18.2(iii), a duty of loyalty to S&C is created requiring the partners to "refrain from competing with the Partnership in the conduct of Partnership business *before the dissolution of the Partnership*" and under Section 18.8, all partners must maintain "all business information" in confidence, which survives any partner's dissociation. (Emphasis added.) At the time Smith began providing confidential and privileged information to S&C's competitor, Cavitch, there were no attempts to dissolve S&C to permit the disclosure.

{¶ 5} In early 2015, Smith departed S&C, taking its various partnership assets and some of its staff with him. This included Smith's unilaterally transferring

the TAS trade name from S&C to himself in August 2016, well over a year after Smith moved his practice from S&C to Cavitch. Smith used S&C employees to facilitate the migration while those employees worked for and were paid by S&C.

{¶ 6} After Smith transitioned to Cavitch, S&C remained liable for the rent and office expense obligations based on the inability to sell the building or relet the office space. Both partners used the office space in some capacity following Smith's departure with Cavitch paying for half the space for a 12-month period. After several years, the dispute between the former partners boiled over and Smith and S&C initiated the underlying action claiming that Condeni secretly retained S&C fees to fund Condeni's new law firm after Smith left S&C. According to Smith, this formed the basis for him to seek to expel Condeni from S&C, a claim that was included in the amended complaint along with a request for an accounting from S&C.

{¶ 7} Condeni answered, asserting claims that Smith withdrew from S&C according to the provision of the S&C Partnership Agreement and Ohio law no later than March 2015 when Smith joined Cavitch, meaning Smith lacked standing to prosecute claims on behalf of S&C.

{¶ 8} A large part of their dispute arises from a fundamental misunderstanding of partnership law that infected the partners' divorce.

{¶ 9} In forming their partnership, Smith and Condeni availed themselves of the benefits of operating under a limited liability partnership, thereby creating S&C through execution of the S&C Partnership Agreement. As a result, that agreement and the Revised Uniform Partnership Act ("RUPA"), the statutory

section controlling the formation, management, and dissolution of partnerships, provides the framework to effectuate a partner's decision to leave the partnership. Thus, in taking advantage of the limited liability partnership protections, Smith and Condeni ceded their ability to unilaterally act outside of the terms of the partnership agreement and Ohio law.  If either desired to leave the partnership, more was necessary than simply taking each partner's clients and divvying up the partnership's property or assets.  Despite the limitations placed on limited liability partnerships, Smith left S&C in 2015, taking business and unilaterally taking assets from the partnership without any attempt to formally dissolve the separate entity, which is a prerequisite to what Smith desired to accomplish — a divorce from S&C and a winding up of its affairs.

{¶ 10} Along those lines, the trial court aptly observed that although the law with respect to RUPA is not well developed in Ohio, especially in terms of lawyers forming partnerships in the practice of law, the current case stands as the "cautionary tale of what not to do" when the partners' relationship has run its course.

{¶ 11}  Important to this discussion is the fact that the Uniform Partnership Act ("UPA") was replaced and dramatically altered in 2008.[1]  By adopting RUPA, the legislature changed the law governing partnership breakups and dissolution. "An entirely new concept, 'dissociation,' is used in lieu of the [UPA] term 'dissolution' to denote the change in the relationship caused by a partner's ceasing

---

[1] Although the S&C Partnership Agreement was executed in May 2007, R.C. Chapter 1776 applies to all partnerships after January 1, 2010.  R.C. 1776.95(B).

to be associated in the carrying on of the business." Official Commentary R.C. 1776.51. Although the term "dissolution" was retained, it took on a different meaning, which was that of acts necessary to the termination of the separate entity consisting of the partnership. *Id.*

{¶ 12} "Dissociation," on the other hand, contemplates the withdrawal or expulsion of a partner from the partnership, which leaves the partnership itself intact. Under RUPA, even if a partner withdraws or is expelled from the partnership, the entity survives that partner's departure. The partnership is an entity separate and apart from the partners' individual interests under R.C. 1776.21(A). RUPA, thus, formally adopted the "entity theory of partnership," providing "a conceptual basis for continuing the firm itself despite a partner's withdrawal from the firm." *Id.* Before RUPA, Ohio followed the "aggregate theory of partnership," in which the partnership was deemed to be an association of the individual partners; the withdrawal of any one partner impacted the entity's very existence. *Arpadi v. First MSP Corp.*, 68 Ohio St.3d 453, 628 N.E.2d 1335 (1994), paragraph one of the syllabus ("[a] partnership is an aggregate of individuals and does not constitute a separate legal entity," construing former R.C. 1775.05(A)); *Fairway Dev. Co. v. Title Ins. Co.*, 621 F.Supp. 120, 122 (N.D.Ohio 1985), citing *Commr. v. Shapiro*, 125 F.2d 532, 535 (6th Cir. 1942) ("It is a fundamental principle of law that any change in the personnel of a partnership will result in its dissolution."); *but see* R.C. 1775.05(A) repealed effective January 1, 2010 (amended to define "partnership" as an "entity" of two or more persons in response to *Arpadi*).

{¶ 13} Thus, Smith's actions in leaving the partnership through providing notice to Condeni are best described as a withdrawal or dissociation from S&C, a move that limits Smith's ability to direct the affairs of S&C, including the dissolution of the partnership or the handling of the entity's assets. Dissociation of a partner does not dissolve the partnership or its ownership of the partnership assets.

{¶ 14} Generally speaking, partnerships are governed according to the partnership agreements under which the entity is formed. Thus, it has been recognized under Ohio law that the default statutory rules governing partnerships may be amended through the partnership agreements to a certain extent. Under R.C. 1776.03(B)(7), for example, the partners may not "[v]ary the right of a tribunal to expel a partner following any events specified in" R.C. 1776.51(E). "Tribunal" is a statutorily defined term of art. "Tribunal" is a court, or if expressly provided in the partnership agreement or otherwise agreed, an arbitrator, arbitration panel, or other tribunal. R.C. 1776.01(W).[2]

{¶ 15} This background formed the foundation of the trial court's findings of fact and conclusions of law. According to the trial court, the S&C Partnership Agreement and RUPA exclusively controlled the dissociation of either partner or the dissolution of the partnership. Neither party disputes this, but the implications of

[2] Interestingly enough, the S&C Partnership Agreement, Section 23.11, includes a mandatory arbitration provision to settle any dispute arising as between partners that neither Smith nor Condeni invoked during any of the disputes that arose following Smith's notice of intent to withdraw from S&C.

the S&C Partnership Agreement impact the allegations within the amended complaint.

{¶ 16} The S&C Partnership Agreement defines "Dissociated Partner" to mean "the partner whose withdrawal, expulsion or other event (other than death or permanent disability resulting in the appointment of a legal representative) causes his or her Dissociation." "Withdrawal," as the procedure is outlined within the agreement, is established under Section 15.2. Under that section, a partner may withdraw from the partnership upon written notice being delivered to the remaining managing partners. The withdrawing partner "shall cease to be a partner and shall be dissociated from [S&C] upon delivery of the notice of withdrawal." Consistent with that provision, the "Dissociation Date" is defined to "mean, in the case of any dissociated Partner, *the date of the event* resulting in the Partner's Dissociation." (Emphasis added.) The trial court found it important that the "Dissociation Date" was exclusively defined as the "date of the event" rather than the date on which the tribunal resolves the issue. Smith does not dispute that his memorandum delivered to Condeni in December 2014 constituted a notice of withdrawal.

{¶ 17} Under Section 15.1, the dissociation of a partner "shall neither result in the dissolution of the Partnership nor require the winding up of the Partnership business, and the rights of the Dissociated partner and remaining Partners *shall be* determined under this Partnership Agreement." (Emphasis added.) *Id.* Those rights are limited, however, to receiving an amount to be periodically paid over a six-month period, starting on the first anniversary of the dissociation. Under Sections

16.2 and 16.3, dissociated partners, other than those who became permanently disabled, retired, or have died, are entitled to 70 percent of the dissociation amount, less any other amounts owed to the partnership. According to the express terms of their agreement, Sections 16.5 and 16.6, no dissociated partner has any interest in the accounts receivable, rights to any collection of cash amounts, or any other asset of S&C, and the dissociated partner ceases to have any rights and duties under the S&C Partnership Agreement as of their dissociation date.

{¶ 18} Based on the S&C Partnership Agreement, Condeni claims that Smith dissociated from S&C between October 29, 2014, and February 28, 2015, with those dates reflecting the bookends of when Smith first violated the terms of the S&C Partnership Agreement by divulging S&C's privileged and confidential information to Cavitch from a private email address and the date in which Smith physically migrated to Cavitch. Any dissociation impacts Smith's ability to act on behalf of S&C, seek an accounting from S&C, or claim damages from alleged breaches of the S&C Partnership Agreement. Smith, however, claims that Condeni's conduct and actions following Smith's departure formed the bases for Smith to seek to expel Condeni from S&C and seek damages based on Condeni's conduct with respect to S&C receivables.

{¶ 19} It is important to distinguish "withdrawal" from "expulsion." Under the terms of the S&C Partnership Agreement, Condeni did not invoke Section 15.2, setting forth the terms for the withdrawal of a partner, to withdraw from S&C in December 2015. Thus, Smith's claims as to Condeni's alleged dissociation stem

from the expulsion clause of the agreement. Under Section 15.3, S&C may expel a partner upon consent of two-thirds of the partners. As the trial court observed, if Smith dissociated from S&C before seeking to expel Condeni from S&C, Smith would lack authority to advance the statutory cause of action under R.C. 1776.51(E).

{¶ 20} It is that issue the trial court resolved, concluding that Smith dissociated from S&C on two different dates, effective either as of the date he sent the memorandum to Condeni outlining his plans to leave the partnership in December 2014 or upon Condeni's claim to expel Smith effective when he violated the confidentiality of S&C by providing the Cavitch partnership information from Smith's private email account in October 2014. Regardless of which date controlled, both predated Smith's advancing a claim under R.C. 1776.51(E) to expel Condeni based on conduct occurring after Smith departed S&C.

{¶ 21} According to the trial court's findings of fact and conclusions of law, neither party has ever sought dissolution of S&C under RUPA or the S&C Partnership Agreement.[3] This impacts much of this case since under RUPA and the express terms of the S&C Partnership Agreement, the partnership exists as an entity separate and independent of the individual partners themselves. That is the price to be had for forming a limited liability partnership.

---

[3] Section 22.1 of "the S&C Partnership Agreement provides for dissolution upon '(a) [t]he written consent of All of the Partners; (b) [t]he sale, transfer or assignment of all or substantially all of the assets of the Partnership; (c) the adjudication of the Partnership as insolvent * * *; or (d) [a]s otherwise required by the Act.'" The Agreement further provides that "[i]n the event of dissolution of the Partnership for any reason, the Managing Partners shall proceed promptly to wind up the affairs of and liquidate the assets of the Partnership and shall without delay file a statement of dissolution."

{¶ 22} As a result of the foregoing, the question of when or if Smith withdrew or otherwise dissociated from S&C is the preliminary question that must be answered before any of the remaining claims between Smith, Condeni, and S&C can be addressed. The amended complaint includes S&C as a named plaintiff, represented by Smith and his counsel of record, which also precluded Condeni from naming S&C as a third party on the counterclaims. However, if Smith effectively dissociated from S&C prior to the filing of the underlying action, he lacked authority to act on behalf of S&C, placing him in an adversarial position to the partnership itself. The trial court agreed with Condeni in that Smith dissociated from S&C effective as early as October 29, 2014, but definitively when Smith sent his December 2014 memorandum to Condeni, which contained the notice of his intent to withdraw from S&C to join Cavitch.

{¶ 23} Accordingly, the trial court concluded that

> Smith used S&C resources and confidential information to facilitate and finance his move to Cavitch, and took substantial physical and intangible assets out of the Partnership after he withdrew from S&C. Further, Mr. Smith did this without the permission or agreement of, or compensation to, his partner or the Partnership.

And finally, the court found that Condeni has never withdrawn from S&C, making him the only partner with authority to bind the partnership.

{¶ 24} It is this conclusion that Smith and S&C challenge in this appeal.[4]

---

[4] Smith and S&C filed this interlocutory appeal from an order certified under Civ.R. 54(B), claiming that the trial court's decision "affects a substantial right of S&C and Smith, determines the action, prevents a judgment in Plaintiffs' favor, and was made in a special proceeding created by statute." Condeni does not oppose this conclusion. The trial court's

{¶ 25} In the first assignment of error, Smith, who also presents the same arguments on behalf of S&C, claims the trial court erred by determining the dissociation date upon a hearing conducted before the trial court without a jury. According to Smith, R.C. 1776.51(E), establishing a court's authority to determine whether to expel a partner from a limited liability partnership based on the statutory criteria, creates a right to a jury trial on the dissociation issue. Absent that right to a jury trial, as Smith claims, the trial court's conclusion to resolve the issue upon conducting an evidentiary hearing otherwise rendered R.C. 1776.51(E) unconstitutional. Smith does not elaborate on the constitutional question beyond referencing his stated belief. That unsupported belief is not sufficient to warrant any further discussion. *See* App.R. 16(A)(7).

{¶ 26} Under R.C. 1776.51 in general, the legislature has provided a list of events leading to a partner's dissociation from the partnership. Two of particular importance are "[t]he happening of an event agreed to in the partnership agreement

---

conclusion, that Smith dissociated from S&C no later than December 2014, effectively disposes of all claims advanced by S&C in the amended complaint and divests Smith of authority to act on behalf of S&C for the purposes of further litigation or advancing breach of contract claims based on the S&C Partnership Agreement. The decision, therefore, affects a substantial right made in a special proceeding under R.C. 2505.02(B)(2). "A 'special proceeding' is one 'that is specially created by statute and that prior to 1853 was not denoted as an action at law or a suit in equity.'" *State ex rel. O'Malley v. Russo*, 156 Ohio St.3d 548, 2019-Ohio-1698, 130 N.E.3d 256, ¶ 21, quoting R.C. 2505.02(A)(2). In this case, Smith sought to expel Condeni under R.C. 1776.51(E); however, the trial court determined that Smith withdrew or otherwise dissociated from S&C before seeking to expel Condeni under the statutory proceeding. Further, in light of the fact that neither party claimed this court lacked jurisdiction over the interlocutory order, the merits of the arguments presented will be addressed in full.

as causing the partner's dissociation," R.C. 1776.51(B), or upon "application *by the partnership or another partner*, a tribunal determines any of the following is cause for expulsion" (Emphasis added.), R.C. 1776.51(E). For the purposes of the expulsion provision of R.C. 1776.51(E), so says Smith, "tribunal" can include a jury based on the common definitions of "tribunal" from various dictionaries.

{¶ 27} "[T]ribunal" is a statutory term of art under Ohio's version of RUPA. "Tribunal" is defined as "a court," or if expressly provided in the partnership agreement, an "arbitrator, arbitration panel, or other tribunal." R.C. 1776.01(W). In this matter, the S&C Partnership Agreement includes an arbitration provision. It is undisputed that neither party invoked the mandatory arbitration provision to resolve their disputes. Thus, the sole question is whether "a court's" authority to consider and resolve the expulsion issue includes a petitioner's right to a jury in prosecuting the statutory proceeding.

{¶ 28} Smith's reliance on dictionaries to define the statutory term of art is misplaced. "Where a statute defines terms used therein, such definition controls in the application of the statute * * *." *Stewart v. Vivian*, 151 Ohio St.3d 574, 2017-Ohio-7526, 91 N.E.3d 716, ¶ 25, quoting *Good Samaritan Hosp. of Dayton v. Porterfield*, 29 Ohio St.2d 25, 29, 278 N.E.2d 26 (1972), *Terteling Bros., Inc. v. Glander*, 151 Ohio St. 236, 85 N.E.2d 379 (1949), and *Woman's Internatl. Bowling Congress, Inc. v. Porterfield*, 25 Ohio St.2d 271, 267 N.E.2d 781 (1971). Smith claims that his seeking to expel Condeni from S&C under R.C. 1776.51(E) is nothing more than a breach of contract claim since the basis of the expulsion would be violations

of the S&C Partnership Agreement. This argument misses the point. Regardless of how the process is characterized, the legislature has empowered "a court" to expel a partner under R.C. 1776.51(E). The official commentary for 1776.51(E) refers to this process as being "judicial expulsion," a reference to the trial court's authority to render a decision without a jury's findings.

{¶ 29} The legislature is aware of the difference between empowering "a court" to decide any given issue and a right to a "jury trial" or the right to a determination by "the trier of fact," which could be either the court or the jury. The Ohio Revised Code is replete with instances demonstrating the difference between "a court" and "a jury." For example, R.C. 2311.04 establishes that issues of law are tried by a "court" while issues of fact must be resolved through a "jury trial." Likewise, R.C. 2506.04 empowers "a court" to find that an administrative decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of the evidence, but nothing thereunder entitles an applicant to a trial by jury before the court renders that decision. *Id.* It is axiomatic that R.C. 2506.04 does not create a right to a jury.

{¶ 30} In those instances, the legislature has not intended for references to "a court" being empowered to decide an issue to include a right to a jury. *See, e.g., Hoops v. United Tel. Co.*, 50 Ohio St.3d 97, 99, 553 N.E.2d 252 (1990) (concluding that the "requirement in R.C. 1701.85 (B) that '*[t]he court* shall thereupon make a finding as to the fair cash value of a share' dispenses with the requirement of a jury trial in such special statutory proceeding" (Emphasis added.)). To generally impute

a jury requirement into a statutory proceeding that unambiguously requires "a court" to render a decision on an issue would impact other sections of the Revised Code.

{¶ 31} Based on the arguments presented, it cannot be concluded that R.C. 1776.51(E) establishes or preserves any right to a jury trial in order for a partner or the partnership to seek the expulsion of a partner. Under the unambiguous language of R.C. 1776.51(E), "a court" is empowered to determine whether the statutory cause for expulsion exists, and as that term is used throughout the Revised Code, it dispenses with the requirement to empanel a jury. Smith has not presented any argument to deviate from the standard interpretation of the term "a court" as used under R.C. 1776.01(W) and throughout the Ohio Revised Code. Standard dictionary definitions, as exclusively relied on by Smith, cannot supplant statutory definitions. The first assignment of error is overruled.

{¶ 32} In the remaining assignments of error, Smith challenges several of the trial court's findings of fact, only one of which is related to the conclusion that Smith dissociated from S&C effective as of December 29, 2014, at the latest based on his notice of intended withdrawal. Smith also claims that the trial court erred by expelling Smith based on his violations of the S&C Partnership Agreement, including the disclosure of confidential partnership information or the wrongful removal of S&C's assets after dissociating himself from the partnership; that the trial court erred in declaring him to have dissociated between October and December 2014 because S&C employees participated in the transfer of Smith's business to

Cavitch; and the trial court erred in overruling his attempt to expel Condeni after Smith had withdrawn from S&C. Because the date of Smith's dissociation impacts the remaining assignments of error, it must be addressed first.

{¶ 33} "Withdrawal" of a partner is established under Section 15.2 of the S&C Partnership Agreement. Under that section, a partner may withdraw from the partnership upon written notice being delivered to the remaining managing partners. The withdrawing partner "shall cease to be a partner and shall be dissociated from [S&C] upon delivery of the notice of withdrawal." Consistent with that provision, the "Dissociation Date" is defined to "mean, in the case of any dissociated Partner, the date of the event resulting in the Partner's Dissociation." The trial court determined that Smith's December 29, 2014 memorandum to Condeni constituted the notice of withdrawal as contemplated under the terms of the partnership agreement.

{¶ 34} Smith's argument on this issue is limited to the general notion that the result of the trial court's application of the unambiguous contractual language means that all lawyers are precluded from changing law firms. Importantly, Smith does not dispute the facts of his divulging S&C's information to Cavitch before seeking to dissolve S&C or that his later memorandum noticed his intended withdrawal from S&C. His only arguments pertain to the application of the law to those undisputed facts. Smith's slippery-slope fear is unwarranted.

{¶ 35} In this case, and under the express terms of the S&C Partnership Agreement, any partner, including the lawyers, could voluntarily withdraw from the

partnership at any time and for any reason.  Nothing impeded Smith's departure.  If S&C had several partners like larger firms, there is little doubt that Smith's departure would not have entitled him to S&C's assets instead of just permitting his migration to a new firm with the option for his clients to follow or stay with the attorney's former firm.  Being allowed to leave does not entitle a lawyer to disregard the organization's founding partnership agreement.  Thus, Smith's entire argument on the December 2014 dissociation date is misplaced.

{¶ 36} Further, the S&C Partnership Agreement expressly provided a mechanism to seek dissolution of the partnership to enable the partners' divorce should a partner's dissociation be inadequate to effectuate the desired outcome.  The driving factor of this case arose from Smith's and, for that matter, Condeni's failure to adhere to the terms of S&C's operating agreement.  By submitting the withdrawal notice instead of seeking dissolution, Smith immediately ceased to be a partner at S&C.  Smith does not present any serious argument contesting the trial court's determination on that point.  According to the express terms of the S&C Partnership Agreement, he ceased to be a partner and no longer had authority to act on behalf of S&C on December 29, 2014, at the latest.  This conclusion resolves the remainder of Smith's assignments of error.

{¶ 37} The remaining assignments of error address Smith's and Condeni's conduct after Smith's dissociation, such as Smith's unilaterally removing S&C assets without any partnership authority or pertaining to Smith's attempt to expel Condeni from S&C based on Condeni's alleged misconduct after Smith's departure to Cavitch.

However, after December 29, 2014, Smith ceased being a partner at S&C, and therefore, under the unambiguous terms of R.C. 1776.51(E), he no longer could seek Condeni's expulsion or hire legal counsel to pursue a claim on behalf of S&C to those ends. Under that provision of the Revised Code, only a "partner or the partnership" may file a petition to have a court expel another partner. Smith was no longer a partner of S&C, and therefore, he could not file a petition to seek Condeni's expulsion or bind S&C by authorizing outside counsel to represent the partnership itself.

{¶ 38} Further, any alleged error with respect to the trial court's characterization of the parties' conduct following Smith's dissociation from S&C effective as late as December 29, 2014, is not ripe for review in this interlocutory appeal solely focused on the determination of Smith's dissociation date that determines who can act on behalf of S&C. The trial court is free to reconsider any factual conclusions not relevant to that limited determination upon remand since the final appealable order in this case was limited to the dissociation claim. For this reason, the remaining assignments of error challenging the findings of facts relevant to the parties' conduct are overruled.

{¶ 39} It must be emphasized that the foregoing conclusion does not preclude or arbitrarily hinder an attorney's ability to practice law wherever they desire, regardless of Smith's attempt to emphatically claim otherwise. If anything, the facts of this case demonstrate the need to take the appropriate measures to effectuate any departure from a limited liability partnership, which in this case

would have been to seek the dissolution of S&C so that the partners could wind up the partnership's affairs and divide its assets. Neither Smith nor Condeni took any steps to dissolve S&C, the continued existence of which appears to be based on their individual shared interest in owning the building leased to S&C. Had Smith taken steps to dissolve S&C at the time he sought to join Cavitch, the parties' lengthy dispute could have largely been avoided. The judicial system holds nonlegal businesses to the standard of adhering to the contractual terms of the formation documents despite their general lack of legal training. That burden cannot be lessened for lawyers taking advantage of the benefits of a limited liability partnership lest a double standard be created allowing attorneys to shirk the obligations of a partnership agreement, the adherence to which would be required of any other business entity operating in Ohio.

{¶ 40} The interlocutory decision of the trial court is affirmed, and the matter remanded for further proceedings.

It is ordered that appellees recover from appellants the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. Case remanded to the trial court for further proceedings consistent with this opinion.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, JUDGE

EILEEN A. GALLAGHER, P.J., and
MICHAEL JOHN RYAN, J., CONCUR